No. 71,646

STATE OF KANSAS, *Appellant*, v. JOSE S. FAVELA a/k/a JOSE S. RIVAS, *Appellee*.

(911 P.2d 792)

Opinion filed February 16, 1996.

*Timothy J. Chambers*, county attorney, argued the cause, and *Keith E. Schroeder*, assistant county attorney, and *Carla J. Stovall*, attorney general, were on the brief for the appellant.

*Philip M. Durr*, of Sterling, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

ABBOTT, J.: This appeal involves both a downward durational departure and a dispositional departure following a plea of nolo contendere to a charge of attempted second-degree murder. The State appealed the departure sentence. The Court of Appeals held that the reasons for departure were not substantial and compelling. It vacated the sentence and remanded for resentencing. We granted the defendant's petition for review.

The facts are not in dispute. The defendant was present at a fight which occurred in Hutchinson, Kansas. At this fight, the defendant's brother was stabbed by Willard LaGrange. The police were called, but before the police arrived at the stabbing site, the defendant left the scene to take his brother to the hospital. The defendant left his brother at the hospital and started driving back to the stabbing site. At this point, the defendant was spotted by law enforcement officers who attempted to stop the defendant us-

ing their lights and siren. The defendant ignored the police and drove to the stabbing scene, running red lights and stop signs along the way, but not engaging in a high speed chase.

At the stabbing scene, the defendant got out of the car holding a gun. The defendant announced that he intended to kill Willard LaGrange for stabbing his brother. A number of law enforcement officers were at the scene and trained their weapons on the defendant in an attempt to persuade the defendant to surrender.

During this standoff, the defendant never pointed the gun in the general direction of any person, but the defendant stated that he was going to shoot LaGrange. Further, the defendant indicated to the law enforcement officers that if they thought it necessary they could go ahead and shoot him. At one point, the defendant opened the slide on his weapon to show the officers that the weapon was loaded. After approximately 45 minutes, the standoff ended and the defendant surrendered his weapon.

The Reno County District Court adjudicated the defendant as an adult pursuant to K.S.A. 38-1636. The defendant pleaded no contest to an amended information charging him with attempted second-degree murder. The district court of Reno County, Judge Lyle, accepted the plea, found the defendant guilty, ordered a presentence investigation (PSI) report, and set the case for sentencing. Attempted second-degree murder with the defendant's criminal history of H carries a presumptive prison sentence of 51 to 59 months with post-release supervision of 24 months. See K.S.A. 1994 Supp. 21-4704(a).

The defendant filed a timely motion for departure from the presumptive sentence, listing six mitigating circumstances which he contended justified departure. In the PSI report, the intended victim, Willard LaGrange, made the following statement, "I feel that the crime he has been charged with is wrong—he only threatened me."

The defendant had been in detention on this case for 6 months when sentencing occurred. The trial court found the six mitigating factors listed in the defendant's motion to depart to be substantial and compelling reasons for departure from the presumptive sentence. The trial court granted the defendant's motion to depart

and sentenced him to 14 months in prison with post-release supervision of 24 months. The trial court then placed the defendant in community corrections for 36 months.

The legislative history of the Kansas Sentencing Guidelines Act indicates that Kansas, to an extent, looked to the determinant sentencing statutes of Washington, Oregon, and Minnesota, in formulating our sentencing scheme. Coates, Summary of the Recommendations of the Sentencing Commission, p. 6 (Report to Senate Committee on Judiciary, January 14, 1992). The case law from those states provides some insight into the issues in this appeal. However, most of the cases deal with upward departures and different statutory language and definitions, and in most instances they are distinguishable from our Kansas statutes and case law.

## SPECIFYING REASONS FOR DEPARTURE

As a preliminary matter, the court must first determine an issue which the Court of Appeals raised *sua sponte*. This is a question of statutory interpretation; thus, this court exercises a de novo standard of review. *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, Syl. ¶ 1, 887 P.2d 140 (1994).

In this case, the sentencing court departed both durationally and dispositionally. However, the sentencing court only recited one list of mitigating factors to justify both departures.

The Court of Appeals noted that the comments to the Minnesota sentencing guidelines consider a dispositional and durational departure to be two separate departures. Thus, the sentencing court is required to cite separate substantial and compelling reasons for each departure. Minnesota Sentencing Guidelines, Comment II.D.02, Minn. Stat. § 244 App. (1992). Relying on this authority, the Court of Appeals stated: "We are persuaded the Kansas Legislature intended for sentencing courts to provide separate reasons for both durational and dispositional departures." 21 Kan. App. 2d at 213.

The 1995 Desk Reference Manual for the Kansas Sentencing Guidelines, p. 31, also states that "[s]eparate reasons for each type of departure are required when a sentence is imposed which amounts to both a durational and dispositional departure." In mak-

ing this assertion, the Desk Reference Manual relies on K.S.A. 1994 Supp. 21-4719, which states:

"(a) When a departure sentence is appropriate, the sentencing judge may depart from the sentencing guidelines as provided in this section.

"(b) When a sentencing judge departs in setting the duration of a presumptive term of imprisonment: (1) The judge shall consider and apply the enacted purposes and principles of sentencing guidelines to impose a sentence which is proportionate to the severity of the crime of conviction and the offender's criminal history; and

(2) the presumptive term of imprisonment set in such departure shall not total more than double the maximum duration of the presumptive imprisonment term.

"(c) When a sentencing judge imposes a prison term as a dispositional departure: (1) The judge shall consider and apply the enacted purposes and principles of sentencing guidelines to impose a sentence which is proportionate to the severity of the crime of conviction; and

(2) the term of imprisonment shall not exceed the maximum duration of the presumptive imprisonment term listed within the sentencing grid. *Any sentence inconsistent with the provisions of this section shall constitute an additional departure and shall require substantial and compelling reasons independent of the reasons given for the dispositional departure.*

"(d) If the sentencing judge imposes a nonprison sentence as a dispositional departure from the guidelines, the recommended duration shall be as provided in subsection (c) of K.S.A. 21-4611 and amendments thereto." (Emphasis added.)

The dissent by Judge Malone in the Court of Appeals opinion addressed this statute and the *sua sponte* issue. The dissent notes that K.S.A. 1994 Supp. 21-4719(c)(2) does require a sentencing judge to specifically define separate substantial and compelling reasons for both a durational departure and a dispositional departure granted in one sentence. However, the dissent points out that this requirement only applies "if a *prison* term is imposed as a dispositional departure which is also combined with an *upward* durational departure." 21 Kan. App. 2d at 216.

For example, when a judge is sentencing a defendant whose presumptive sentence is nonimprisonment, K.S.A. 1994 Supp. 21-4719(c) allows a sentencing judge to make a dispositional departure and sentence the defendant to prison. If a judge makes such a dispositional departure and sentences the defendant to prison, 21-4719(c)(2) states that the term of imprisonment shall not exceed the maximum presumptive imprisonment term in the grid. If the

trial judge imposes a term of imprisonment exceeding the maximum imprisonment term in the grid, then this longer sentence is considered a durational departure and 21-4719(c)(2) requires the judge to justify the durational departure with reasons independent of the reasons provided for the dispositional departure. The purpose of 21-4719(c) is to prevent defendants who have presumptive sentences of nonimprisonment from being sentenced to prison for long terms.

This section does not apply to the sentencing departure at hand. Here, the judge did not depart by sentencing a defendant with a nonimprisonment presumptive sentence to prison. Rather, just the opposite occurred. Here, the judge departed by not sending the defendant to prison even though the defendant's presumptive sentence was imprisonment. As such, 21-4719(d) applies, which states: "If the sentencing judge imposes a nonprison sentence as a dispositional departure from the guidelines, the recommended duration shall be as provided in subsection (c) of K.S.A. 21-4611 and amendments thereto." K.S.A. 1994 Supp. 21-4611(c)(1)(A) states that recommended duration of probation in all felony cases is 36 months for crimes in crime severity levels 1 through 5. The defendant was convicted of a severity level 3 crime, thus the sentencing court imposed 36 months of probation as required by 21-4611(c)(1)(A).

" 'One of the more common rules of statutory interpretation is that expressed in the Latin maxim *expressio unius est exclusio alterius, i.e.,* the mention or inclusion of one thing implies the exclusion of another.' " *State v. Luginbill,* 223 Kan. 15, 20, 574 P.2d 140 (1977). Here, the legislature clearly included the requirement that the sentencing court give separate reasons for dispositional and durational departures in the same sentence for a very unique type of sentencing departure. No such requirement is provided for any other type of sentencing departure. Thus, the legislature must not have intended such a requirement in any other type of sentencing departure, such as a dispositional departure by not sentencing the defendant to prison even though the defendant had a presumptive prison sentence combined with a downward durational departure.

We agree with the *Favela* dissent that "the sentencing court was not required to provide separate reasons for the dispositional and durational departures in this instance." 21 Kan. App. 2d at 216. The Desk Reference Manual is not wrong in its statement. It simply failed to clarify that the requirement only applies to one type of double departure. It may be that it would be of benefit to the reviewing court for the trial judge to make separate and independent findings in those instances where there might be separate reasons for each type of departure. However, failure to do so would not be in violation of legislative intent and would not amount to reversible error.

## SEPARATION OF POWERS

The State makes this unique argument based on a statement made by the sentencing judge. During the sentencing proceeding, the judge stated in pertinent part:

"I'm aware of the what the facts are that gave rise to the . . . to your actions in this case. I know your brother got stabbed by this Willard LaGrange and I know Willard LaGrange. He stood in front of me just like you have a couple of times. And it is interesting that he puts in here [referring to the victim statement in the presentence investigation report] that, that he thinks you got charged with the wrong crime, that all you did was threaten [him]—which would have been an aggravated assault which is what a threat is with a gun—and he recommends minimum incarceration. And you know, Willard LaGrange has been in court enough he probably knows what a charge ought to be maybe more so than the county attorney. I don't know. But he's got a bunch of cases against me [*sic*], but that's not any worry of yours right now."

Further, the court said:

"*But I see this as an aggravated assault case*, and aggravated assault case is a Level 7. And with a criminal history of H a level 7 computes to 14 months in the penitentiary. You've done 6 months in the Reno County Detention Center or the Bob Johnson Youth Shelter. I'm going to give you an opportunity to be placed on Community Corrections for a period of 24 months." (Emphasis added.)

The State contends that it is clear from this language that the sentencing court disagreed with the county attorney's decision to prosecute the defendant for attempted murder in the second degree. According to the State, the sentencing court's decision to sentence the defendant as if he had been convicted of aggravated

assault, instead of attempted murder, was a violation of the separation of powers between the judicial and executive branches of state government. In support of this argument, the State cites to *State v. Williamson*, 253 Kan. 163, 853 P.2d 56 (1993), which finds that a county or district attorney controls criminal prosecutions, including the determination of who shall be prosecuted and what crimes shall be charged.

The State asserts that the sentencing court's decision to treat the defendant as if he had been convicted of aggravated assault and sentence him as such resulted in an amendment of the charged crime. Thus, according to the State, this decision by the court exceeded its judicial power and usurped the power vested in the executive branch to determine what crime the defendant should have been charged with.

According to the defendant, all the sentencing court did in this case was sentence him, it did not determine what crime he should have been charged with. In making this argument, the defendant distinguishes *State v. Williamson*, 253 Kan. 163. In *Williamson*, 253 Kan. at 165, the trial court actually dismissed a charge filed by the State because the court disagreed with the charge. This is not the case here. Rather, the court here accepted the defendant's plea of no contest for attempted second-degree murder, thereby acknowledging that the county attorney has the right to determine what crime a defendant is charged with. The court did not attempt to dismiss or amend the defendant's charge as the court in *Williamson* did. The sentencing court merely exercised its power of sentencing under K.S.A. 1994 Supp. 21-4716, which grants the sentencing judge the right to depart from a presumptive sentence.

The sentencing court specifically based this departure on factors—the degree of harm associated with the defendant's crime was less than typical, and the victim was an aggressor or participant in the underlying altercation. Furthermore, the court also adopted the mitigating factors set out in the defendant's motion for departure as justifications for its departure.

Most Kansas cases regarding the separation of powers doctrine and sentencing concern whether the *judicial* branch's power has been usurped due to recommendations which a court must follow

when sentencing a defendant. See *State v. Reed,* 248 Kan. 792, 793, 811 P.2d 1163 (1991) (finding that K.S.A. 1989 Supp. 21-4603[3][a], which provides that a district court shall modify a defendant's sentence when recommended by the State Reception and Diagnostic Center, does not violate the separation of powers doctrine). The *Reed* case also points out that this court has "previously rejected separation of powers challenges to mandatory sentencing provisions which limit the sentencing discretion of a district court." 248 Kan. at 798. In making this assertion, *Reed* cites to the following cases:

"*State v. Freeman,* 223 Kan. 362, 370-71, 574 P.2d 950 (1978) (K.S.A. 1977 Supp. 21-4618 mandatory sentencing provisions for those convicted of certain crimes involving use of a firearm upheld); *City of Junction City v. Griffin,* 227 Kan. 332, 338-39, 607 P.2d 459 (1980) (ordinance requiring mandatory jail sentence for prostitution offense upheld). See also *State v. Coutcher,* 198 Kan. 282, 286-87, 424 P.2d 865 (1967) (prosecutorial discretion in seeking sentence enhancement against habitual offenders no violation of separation of powers); *State v. Gibson,* 8 Kan. App. 2d 135, 137-38, 651 P.2d 949 (1982) (mandatory fine provision of K.S.A. 1980 Supp. 8-1909 [overweight truck] no violation of separation of powers)." 248 Kan. at 798-99.

In *State v. Compton,* 233 Kan. 690, 664 P.2d 1370 (1983), the statute at issue was K.S.A. 8-1567, which prohibits a prosecutor from plea bargaining a case if the purpose of the plea is to allow a person to escape the mandatory DUI penalties. This court found that the statute did not usurp the powers of the prosecutor so as to violate the separation of powers doctrine because the interference was very limited. 233 Kan. at 699. In so holding, the court stated:

" 'The basic meaning of the separation of powers doctrine is that the whole power of one department should not be exercised by the same hands which possess the whole power of either of the other departments. [Citations omitted.] It does not necessarily follow, however, that an entire and complete separation is either desirable or was ever intended by the framers of the Constitution. The fact that the powers of one department may overlap with another department's powers has long been a recognized fact. Throughout the judicial history of this state early decisions attempted to apply the doctrine strictly, refusing to tolerate any overlapping of powers. [Citation omitted.] The more recent cases have modified the doctrine, taking a more pragmatic, flexible and practical approach giving recognition to the fact there may be a certain degree of blending or admixture of

the three powers of government and that absolute separation of powers is impossible.' " 233 Kan. at 696-97 (quoting *State v. Greenlee*, 228 Kan. 712, 715-16, 620 P.2d 1132 [1980]).

Thus, if the sentencing court usurped the power of the prosecutor at all, it did so in a very limited way and did not violate the separation of powers doctrine.

In this case it appears the trial court, after determining there were substantial and compelling reasons to depart, viewed the penalty for aggravated assault and determined that a similar sentence would be appropriate in this case. The trial court might have chosen different words that would have made its intention more clear, but our examination of the record satisfies us that the trial judge was simply explaining why he chose the particular sentence and not usurping the power of the prosecutor.

## REVIEW OF DEPARTURE SENTENCE

K.S.A. 1994 Supp. 21-4721 states in pertinent part:

"(a) A departure sentence is subject to appeal by the defendant or the state. The appeal shall be to the appellate courts in accordance with rules adopted by the supreme court.

. . . .

"(d) In any appeal from a judgment of conviction imposing a sentence that departs from the presumptive sentence prescribed by the sentencing grid for a crime, *sentence review shall be limited to whether the sentencing court's findings of fact and reasons justifying a departure:*
(1) *Are supported by the evidence in the record*; and
(2) *constitute substantial and compelling reasons for departure.*
"(e) In any appeal, the *appellate court may review a claim that*:
(1) *The sentence resulted from partiality, prejudice, oppression or corrupt motive;*

. . . .

"(f) The appellate court may reverse or affirm the sentence. If the appellate court concludes that the trial court's factual findings are not supported by evidence in the record or do not establish substantial and compelling reasons for a departure, it shall remand the case to the trial court for sentencing." (Emphasis added.)

The State claims that the sentencing court's facts and reasons justifying departure were not supported by evidence in the record and did not constitute substantial and compelling reasons justifying departure. The State further claims that the overall sentence re-

sulted from partiality, prejudice, oppression, or corrupt motive. Each of these issues will be addressed in turn.

Here, the court specifically adopted all six of the reasons to depart set forth in the defendant's motion to depart. We are satisfied all six reasons adopted by the trial court are properly before this court for review.

The defendant's motion to depart set out the following mitigating factors in an attempt to justify departure:

1. The defendant is only 17 years of age.
2. The defendant has not previously committed any offenses which would be deemed a felony if he had been an adult.
3. The victim was an aggressor in the incident which preceded the defendant's offense.
4. The defendant's brother was stabbed and seriously injured by the victim as a result of the incident which preceded the defendant's offense.
5. Because of the defendant's age and immaturity, his judgment as to how to respond to the stabbing of his brother by the victim was impaired.
6. No harm resulted from the defendant's offense, and as such the harm was significantly less than typical for such an offense.

The State contends the sentencing court listed two more reasons justifying the departure sentence—one, that the victim viewed the crime as an aggravated assault, and two, that the court viewed the crime as aggravated assault. The majority of the Court of Appeals agreed with the State. The court found that "the sentencing court felt compelled to depart primarily because the court determined the defendant was improperly charged and should have only been charged with aggravated assault." 21 Kan. App. 2d at 212.

We disagree. The trial court mentioned that the victim felt the defendant had been improperly charged and it may have believed this also, but it did not base the departure on these reasons. Rather, the court based the departure on the fact the degree of harm attributable to this crime was significantly less than typical, the victim

was an aggressor or participant in the underlying incident, and the other four reasons listed in the motion to depart.

Under the substantial competent evidence standard of review, the question is: Were the reasons enumerated by the sentencing court as justifying departure supported by evidence in the record? The trial court relied on the following six reasons for departing.

The defendant was only 17 years old. The State concedes that this finding of fact is supported by evidence in the record.

The defendant had not previously committed any offenses which would be deemed a felony if he had been an adult. The State concedes that this finding of fact is supported by evidence in the record.

The defendant's brother was stabbed and seriously injured by the victim as a result of the incident which preceded the defendant's crime. The State concedes that this finding of fact is supported by evidence in the record.

The defendant's judgment as to how to respond to the stabbing of his brother by the victim was impaired because of the defendant's age and immaturity.

In the defense counsel's recommendation to the court prior to sentencing, he stated the following:

"[H]e [the defendant] [saw] his brother . . . involved in an altercation with another individual . . . . [in which] the defendant's brother was stabbed and seriously injured.

"Mr. Favela drove his brother to the hospital, assisted his brother into care and if you were to ask his version, basically flipped out over the situation. . . . [because he got] his brother's blood on his hands . . . [He] [g]ot in the car and returned to the scene where his brother had been stabbed. . . . [A] police officer pulled in behind him and with lights on proceeded to follow . . . Mr. Favela to the scene.

"Mr. Favela, because of his state of mind, quite frankly, just continued . . . even though it was obvious there were police officers there. He arrives at the scene, he gets a gun out of the vehicle and says essentially I'm going to kill the man who stabbed my brother. Officers intervened. Mr. Favela is there and is confronted by the officers, continuing basically to say that. Has a gun in his hands, but the gun is always either at his side or under his arm, is not pointed at anyone, and he continues saying I'm going to kill the man who stabbed my brother. While talking to the officers he tells them I'm not here to hurt you, I don't want anything

to do with you. But quite frankly, there was the long, long discussion, standoff, whatever you want to say.

"Mr. Favela, . . . if he were to sit here and testify would tell the court that . . . he was basically out of it. He doesn't remember really much about the incident except that he was there, he was mad, he was upset, and who knows what would have happened. But at any rate he was there, he was with the gun, he was saying those things and after a long standoff the police finally talked him into surrendering the weapon.

"The situation, and what I want to point out looking at the reasons for departure—and it really doesn't fit neatly into the categories—but what I'm looking at is a person who's 17 years old, who's not fully mature, who perhaps doesn't understand all of his consequences, who has just seen his brother stabbed, who is severely, emotionally distraught and decides, unwisely, to take matters into his own hands. And I believe that because of his age, because of his immaturity, because of what had happened, that his own logical reasoning process was in fact impaired. That he was not in any position to logically think through the consequences of his action, particularly when you look at the fact that not only were officers there at the scene, but officers followed him to the scene and despite all that he just continued as if they were not there to begin with, initially. And I think that anyone who was thinking logically, who was thinking clearly in their own right mind would not have done such a thing.

"And so I think it simply points out the fact that . . . at the time this was occurring this was something where his own emotions overrode any thought . . . . That isn't an excuse. Quite frankly, the statute points out that impairment, in fact, is not an excuse. But it is something to consider when we look at whether or not we should depart from sentence."

The State contends that there is no evidence in the record other than the defense counsel's self-serving allegation that defendant's judgment was impaired due to the stabbing. The State points out that neither the defendant nor the expert testified to this fact at the sentencing hearing. In making this argument, the State cites to *State v. Hobbs*, 60 Wash. App. 19, 24, 801 P.2d 1028 (1990), *rev. denied* 116 Wash. 2d 1022 (1991), in which the court held that the defendant's loss of temper and being emotionally distressed did not indicate the defendant's capacity to appreciate the wrongfulness of his conduct had been impaired. The *Hobbs* court also held that the self-serving assertions by the defendant's attorney, without expert testimony, was insufficient to justify the sentencing court's finding.

On the other hand, the defendant contends that his defense counsel's statements to the court that defendant had "flipped out" were not self-serving allegations, as the State argues, for two reasons. First, the defendant contends that his counsel's statements were merely an interpretation of facts stipulated to in the affidavit and that the sentencing court apparently arrived at this same interpretation.

In his second, and more persuasive, argument, the defendant cites to K.S.A. 1994 Supp. 21-4716(c), which states in pertinent part:

"(c) In determining aggravating or mitigating circumstances, the court shall consider:

(1) Any evidence received during the proceeding;

(2) the presentence report;

(3) written briefs and *oral arguments* of either the state or counsel for the defendant; and

(4) any other evidence relevant to such aggravating or mitigating circumstances that the court finds *trustworthy and reliable*." (Emphasis added.)

The statute is not as clear on this issue as one would like. On the one hand, the sentencing court was perfectly justified in relying on the oral arguments of the defense counsel, especially if the court considered such argument to be trustworthy and reliable, in determining whether a mitigating circumstance existed. K.S.A. 1994 Supp. 21-4716(c)(3), (4). On the other hand, an appellate court must review the facts relied upon by the sentencing court in departing to see if the factors are supported by *evidence* in the record. K.S.A. 1994 Supp. 21-4721(d)(1).

The sentencing court was correct in relying on the defense counsel's oral argument and finding that the defendant's judgment was impaired when he committed this offense for two reasons. First, the purpose of 21-4721(d)(1) and its requirement that the sentencing court's findings be supported by *evidence* in the record is to ensure that the court's findings are not "clearly erroneous." See *State v. Gideon*, 257 Kan. 591, 622-23, 894 P.2d 850 (1995). A reviewing court may be assured that a sentencing court's findings are not clearly erroneous or made up by the sentencing court, if the findings are based upon oral statements of a defense counsel

which the sentencing court apparently regarded as reliable and trustworthy. Once the trial judge determines the credibility of the defense counsel's statements and decides to rely upon the statements, a reviewing court should not reweigh the credibility of the counsel's statements. See *Taylor v. State*, 252 Kan. 98, 104; 843 P.2d 682 (1992) (finding it is the duty of the trial court to pass on the credibility of the witnesses).

Second, the sentencing court is allowed under 21-4716(c) to rely on defense counsel's oral argument in finding that the defendant's judgment was impaired even though 21-4721(d)(1) states that the sentencing court's finding must be supported by *evidence*, because 21-4716(c) is the more specific statute. See *State v. Williams*, 250 Kan. 730, Syl. ¶ 3, 829 P.2d 892 (1992) (finding that to the extent there is a conflict between a general and a specific statute, the specific statute should prevail unless the legislature intended to make the general statute prevail). Thus, the sentencing court's departure finding that the defendant's judgment was impaired at the time of the offense because of his brother's stabbing, his age, and his immaturity is not clearly erroneous and is supported by oral arguments of the defense counsel which the sentencing court apparently found to be trustworthy and reliable.

Next, in granting a departure sentence, the trial court relied on the fact that the victim in this case was an aggressor, or at least a participant in the underlying event that led to the criminal conduct and conviction of the defendant in this case.

The State contends that this departure justification is not supported by evidence in the record. The State points out that the police were dispatched to an apparent gang fight, and when they arrived the defendant was not at the scene but the intended victim, Willard LaGrange, was at the scene. The State asserts that there was no evidence in the record that the intended victim was the aggressor in the stabbing or an aggressor against the defendant. Rather, according to the State, the defendant was the aggressor because he arrived with a loaded gun at the location where the victim was and announced that he intended to kill the victim.

However, the defendant points out that K.S.A. 1994 Supp. 21-4716(b)(1)(A) only requires that the victim be an aggressor *or at*

*least a participant* in the underlying incident. Keeping this in mind, there is substantial competent evidence in the record that the intended victim, Willard LaGrange, was a participant in the underlying crime. It is clear from the sentencing record that Willard LaGrange stabbed the defendant's brother and that the defendant attempted to kill the victim as a result of the stabbing. Whether LaGrange was an aggressor in the stabbing or merely defending himself does not matter; it was clear he was a participant. Thus, this finding is supported by evidence in the record. The Court of Appeals dissent agreed, finding that this factor was supported by substantial competent evidence. 21 Kan. App. 2d at 215. The majority did not address this issue.

There may have been some confusion on the State's part because the defendant's motion to depart does not use the "participant" language. It only states "[t]hat the victim was an aggressor in the incident which preceded the defendant's offense." While the sentencing court did adopt the mitigating factors as they were listed in the defendant's motion to depart, the sentencing court also specifically enumerated two departure reasons, one of these being "that the victim in this case was in fact an aggressor *or at least a participant* [in the underlying event] that led to the criminal conduct of the defendant." (Emphasis added.) Further, the journal entry also uses the "participant" language. Thus, the sentencing court intended to find that the victim was a "participant" in the underlying case, and this finding is supported by substantial evidence in the record.

The trial court, to justify departure, also relied on the fact that no harm resulted from the defendant's offense and that the harm was significantly less than typical for such an offense.

The State points out that the crime the defendant was convicted of, attempted second-degree murder, does not require any degree of harm or loss. K.S.A. 1994 Supp. 21-3301; K.S.A. 1994 Supp. 21-3402. Thus, the State reasons that the defendant's crime, even if harm did not result from it, could not have caused less harm than is typical because such crimes do not have any "typical" harm associated with them. Further, the State contends that there is no evidence in the record which indicates harm did not occur from

this crime. The defendant did not present evidence that the victim was not physically or emotionally harmed by the defendant's crime.

The defendant concedes that by definition an "attempt" crime does not require a degree of harm or loss. However, the defendant contends that typically physical or emotional harm does occur to the intended victim of attempted murder. Further, the defendant asserts that he presented evidence that the intended victim in this crime did not suffer any physical or emotional harm. The defendant points to the victim's statement in the PSI report as evidence that the defendant was not harmed physically or emotionally by the crime. The victim stated in the PSI report, "I feel that the crime [the defendant] has been charged with is wrong—he only threatened me."

There is no evidence in the record as to what harm typically results from an attempted murder. There is also no evidence in the record to indicate that the victim involved here did not suffer emotionally or physically.

However, the Court of Appeals dissent found this factor was supported by substantial competent evidence. The dissent stated:

"In this case, the victim wrote a letter to the sentencing judge stating that he believed the defendant was being treated too harshly and asking that the defendant receive leniency. It is reasonable that a sentencing court could infer from this evidence that the degree of harm or loss attributed to the current crime of conviction was significantly less than typical for such an offense." 21 Kan. App. 2d at 215.

We agree that the victim's statement indicates that he was not harmed either emotionally or physically by the crime. In deciding to depart downward, the trial court could, as part of the-whole picture, consider the facts concerning the attempt as well as the victim's thoughts on the crime as to how the defendant should be sentenced. Standing alone, the court's finding would be insufficient to show a substantial and compelling reason to depart. However, common sense and experience tells us that this is not a typical attempted second-degree murder case and that the victim's attitude is not a typical victim's attitude in an attempted second-degree murder case. Therefore, the trial court should be able to consider it as part of the overall picture. The trial court did not commit

reversible error in considering the degree of harm as a departure factor.

## SUBSTANTIAL AND COMPELLING REASONS

K.S.A. 1994 Supp. 21-4721(d)(2) states that when a departure sentence is appealed, the appellate court shall determine whether the sentencing court's "findings of fact and reasons justifying a departure . . . constitute *substantial and compelling reasons* for departure." (Emphasis added.)

The State contends that one of the underlying purposes of the sentencing guidelines—that of sentence uniformity—will not be served if sentencing judges fail to follow the guidelines in a typical case. Thus, in an effort to prevent sentencing judges from frequently or inappropriately departing, the State reasons that this court should determine whether substantial and compelling reasons existed for departure as a matter of law.

On the other hand, the defendant contends that if an appellate court should review the sentencing court's reasons for departing to see if they are substantial and compelling as a matter of law, this would violate the policy that the finder of fact is in the best position to rule upon the credibility, sufficiency, and weight of the evidence. Thus, according to the defendant, the reasons given by the sentencing court for departure should only be reviewed to determine if the sentencing court "abused its discretion." In making this argument, the defendant cites to a few Minnesota cases which have ruled that departure should only be reviewed to determine if the court abused its discretion. Using this standard, the defendant contends it is clear that the trial court did not abuse its discretion in justifying the departure.

The Court of Appeals reviewed the law of Washington, Oregon, and Minnesota and found that while Minnesota does use the abuse of discretion standard, both Washington and Oregon require the appeals courts to review the reasons given for departure as a matter of law. The majority agreed with the State and found that appellate courts should review the sentencing court's reasons for departure to see if such reasons are substantial and compelling reasons as a matter of law. 21 Kan. App. 2d at 209-11.

In *Gideon*, 257 Kan. at 623, this court stated: "A claim that the departure factors relied upon by the court do not constitute substantial and compelling reasons for departure is a *question of law.*" Thus, this issue should be reviewed de novo.

As the parties point out, the Kansas Legislature does not define what is a substantial and compelling reason for departure. However, the legislature did give some guidance in making the determination whether reasons justifying departure are substantial and compelling.

K.S.A. 1994 Supp. 21-4719(b)(1) states:

"(b) When a sentencing judge departs in setting the *duration of a presumptive term* of imprisonment: (1) The judge shall *consider and apply the enacted purposes and principles of sentencing guidelines* to impose a sentence which is proportionate to the severity of the crime of conviction and the offender's criminal history." (Emphasis added.)

The Kansas Legislature did not specifically provide statutory purposes and objectives for the sentencing guidelines. However, the Court of Appeals points to the principles and purposes which the guidelines are based upon according to legislative history. These principles are:

"● Prison space should be reserved for serious/violent offenders.
● The degree of sanctions imposed should be based on the harm inflicted.
● Sanction should be uniform and not related to socioeconomic factors, race, or geographic location.
● Penalties should be clear so everyone can understand exactly what has occurred after such are imposed.
● Incarceration should be reserved for serious violent offenders who present a threat to public safety.
● The State has an obligation to rehabilitate those incarcerated; but persons should not be sent to prison solely to gain education or job skills, as these programs should be available in the local community.
● The system must be rational to allow policymakers to allocate resources. See Coates, Summary of the Recommendations of the Sentencing Commission, p. 6-7 (Report to Senate Committee on Judiciary, January 14, 1992). See also Kansas Sentencing Guidelines Implementation Manual (1992), p. i-1-2 (restating the goal and assumptions upon which the guidelines are grounded)." 21 Kan. App. 2d at 210.

Further, this court has recognized three legislative purposes of the guidelines—(1) reduce prison overcrowding, (2) protect public

safety, and (3) standardize sentences so similarly situated offenders are treated the same in order to reduce the effects of racial or geographic bias. *State v. Gonzales*, 255 Kan. 243, 249, 874 P.2d 612 (1994).

Finally, the legislature provided a *nonexclusive* list of mitigating factors which the court may consider in determining if substantial and compelling reasons for departure exist. These mitigating factors are:

"(b)(1) Subject to the provisions of subsection (b)(3), the following nonexclusive list of mitigating factors may be considered in determining whether substantial and compelling reasons for a departure exist:

(A) The victim was an aggressor or participant in the criminal conduct associated with the crime of conviction.

(B) The offender played a minor or passive role in the crime or participated under circumstances of duress or compulsion. This factor is not sufficient as a complete defense.

(C) The offender, because of physical or mental impairment, lacked substantial capacity for judgment when the offense was committed. The voluntary use of intoxicants, drugs or alcohol does not fall with the purview of this factor.

(D) The defendant, or the defendant's children, suffered a continuing pattern of physical or sexual abuse by the victim of the offense and the offense is a response to that abuse.

(E) The degree of harm or loss attributed to the current crime of conviction was significantly less than typical for such an offense." K.S.A. 1994 Supp. 21-4716(b)(1).

Thus, the question is: Do the factors cited by the sentencing court as reasons for departure constitute substantial and compelling reasons as a matter of law?

Each of the factors are separately set forth.

## AGE 17

The State contends that the fact the defendant was only 17 when he committed the crime is not a substantial and compelling reason justifying departure because the defendant was adjudicated to stand trial as an adult on the charge of attempted murder. Further, in an apparent attempt to show the defendant was a dangerous 17-year-old, the State pointed to the testimony of a police officer who participated in the stand-off which it presented at the sentencing

hearing. The officer testified that the defendant goes by the street name of Lunatic and the officer thinks the defendant is in a gang.

K.S.A. 1994 Supp. 21-4716(b)(2)(A) specifically lists the victim's young age as an aggravating factor but 21-4716(b)(1) says nothing about the defendant's young age being a mitigating factor. Even though the list of mitigating factors is nonexclusive, the doctrine of *expressio unius est exclusio alterius* applies here, and, thus, the legislature must not have intended for the defendant's young age to be a mitigating factor. The fact the defendant was only 17 years old at the time of the offense is not a substantial and compelling reason justifying departure as a matter of law, but it may be considered as part of the entire package.

## PRIOR RECORD

The trial court found the fact that the defendant had not previously committed any offense which would be deemed a felony if he had been an adult was a substantial and compelling reason justifying departure. Citing a Washington case, the State contends this reason is not a substantial and compelling reason justifying departure. *State v. Pascal*, 108 Wash. 2d 125, 137, 736 P.2d 1065 (1987). The State argues that the defendant's minimal criminal history was credited toward him in that he received a criminal history score of H and a corresponding presumptive sentence on the guidelines grid.

In *State v. Trimble*, 21 Kan. App. 2d 32, 894 P.2d 920 (1995), the defendant had a presumptive sentence of nonimprisonment, but the sentencing court dispositionally departed and sentenced the defendant to prison. One of the reasons the trial court gave for departing was that the defendant had committed and was convicted of a string of burglaries while on parole. The defendant made the argument that these offenses were considered both in his criminal history score and as an aggravating factor and, thus, were counted against him twice. The Court of Appeals found that this reason could be used as a substantial and compelling reason justifying departure because the sentencing court did not use the offenses generally but used the offenses as an indication that the defendant

had a propensity to commit crimes while on supervised release. 21 Kan. App. 2d at 38-39.

In *State v. Richardson*, 20 Kan. App. 2d 932, 941, 901 P.2d 1 (1995), the sentencing court dispositionally departed from the guidelines sentence in the defendant's favor. As one of the substantial and compelling reasons justifying this departure, the sentencing court noted that the defendant's prior felonies were 14 years old and that the defendant had not committed a felony of any type for the past 10 years. The State appealed to the Court of Appeals, contending that "a defendant's criminal history cannot be used as justification for a departure sentence when the sentencing guidelines have already taken the defendant's criminal history into account in determining the presumptive sentence within the grid." 20 Kan. App. 2d at 941. The Court of Appeals found that the sentencing court relied upon factors which the sentencing grid did not take into account, such as the time elapsed since the last felony and the last person felony committed by the defendant. Thus, the *Richardson* court found that the sentencing court could use these reasons as mitigating factors. Viewing these reasons in light of the policies of the guidelines, the Court of Appeals found these reasons were substantial and compelling reasons justifying departure. 20 Kan. App. 2d at 942-43.

The sentencing court made comments on the record that the defendant's prior crimes simply consisted of stealing two packages of cigarettes and possession and transportation of alcoholic beverages. Further, the sentencing court stated that the defendant was just a kid crook and that this crime was out of character for the defendant. These comments show that the sentencing court relied on this factor in a way in which the defendant's criminal history score did not take into account. Thus, the fact that the defendant had not previously committed any offense which would be deemed a felony if he had been an adult was properly used as a substantial and compelling reason justifying departure in this case.

## BROTHER WAS STABBED

The trial court found the fact that the defendant's brother was stabbed and injured by the intended victim was a substantial and

compelling reason justifying departure. The State contends that this should not be a substantial and compelling reason justifying departure because there is no evidence that the victim threatened the defendant or that the defendant acted in self-defense. The State contends that the defendant was purely motivated by revenge and that this should not be a substantial and compelling circumstance justifying departure.

All of the mitigating circumstances listed in K.S.A. 1994 Supp. 21-4716(b)(1) involve some sort of special circumstances which made the crime atypical. Certainly, most attempted murders are not preceded by a member of the defendant's family being stabbed. Thus, this factor is a special circumstance which makes the defendant's crime atypical. Further, we believe this factor meets the definition of substantial and compelling as stated in *State v. Rhoads*, 20 Kan. App. 2d 790, 799, 892 P.2d 918 (1995). *Rhoads* defines the term substantial as "something that is real, not imagined, something with substance and not ephemeral." 20 Kan. App. 2d at 799. The defendant did not imagine that his brother was stabbed by the victim. He was at the scene when it occurred. *Rhoads* also defines the term compelling as a factor which forces the court "to leave the status quo or go beyond what is ordinary." 20 Kan. App. 2d at 799. The factor of the defendant's brother being stabbed by the victim goes beyond the ordinary attempted murder case. We think the sentencing court was right to leave the status quo and treat this factor as a substantial and compelling circumstance justifying departure.

## DEFENDANT'S AGE AND IMMATURITY

The trial court found the fact that the defendant's judgment as to how to respond to the stabbing of his brother by the victim was impaired due to the defendant's age and immaturity was a substantial and compelling reason justifying departure. Neither party nor the Court of Appeals addresses this issue. In K.S.A. 1994 Supp. 21-4716(b)(1), the legislature stated that "the following nonexclusive list of mitigating factors may be considered in determining whether substantial and compelling reasons for a departure exist." This factor is analogous to mitigating factor (C), which states: "The

offender, because of physical or mental impairment, lacked substantial capacity for judgment when the offense was committed." Thus, this factor qualifies as a substantial and compelling reason justifying departure.

## THE VICTIM WAS AN AGGRESSOR OR A PARTICIPANT

The trial court found the fact that the victim was an aggressor, or at least a participant, in the incident which preceded the defendant's crime was a substantial and compelling reason justifying departure. This factor is based on the mitigating circumstance found in K.S.A. 1994 Supp. 21-4716(b)(1)(A). The Court of Appeals did not address whether this factor was a substantial and compelling reason justifying departure, but the dissent did. The dissent stated:

"Cases in which the sentencing court does not rely upon any statutory aggravating or mitigating factors to depart should be viewed with a stricter scrutiny. However, when the sentencing court relies upon statutory aggravating or mitigating factors to depart, these reasons should be given great deference by a reviewing court." 21 Kan. App. 2d at 215.

The dissent found this reason constituted a substantial and compelling reason justifying departure as a matter of law. 21 Kan. App. 2d at 216. This factor indicates that the defendant in this case is not a serious or violent offender but committed this offense based on the actions of the victim. This factor is consistent with the guidelines policy of reserving prison space only for the most serious and violent offenders in order to reduce prison overcrowding. Moreover, this factor fits the definition of substantial and compelling as provided in *Rhoads*, 20 Kan. App. 2d at 799. Thus, we find this factor was a substantial and compelling reason justifying departure.

## NO HARM

The trial court found the fact that no harm resulted from the defendant's offense and, as such, the harm was significantly less than typical for such an offense was a substantial and compelling reason justifying departure. This factor is based on the mitigating circumstance found in K.S.A. 1994 Supp. 21-4716(b)(1)(E). Again, the dissent found that since this factor was based on a specifically listed mitigating circumstance, it should be given great deference.

The dissent found this reason constituted a substantial and compelling reason justifying departure. 21 Kan. App. 2d at 215-16. The factor indicates the defendant is not a serious or violent offender and, thus, the factor furthers one of the purposes of the guidelines. As such, this factor is a substantial and compelling reason as a matter of law and justifies departure.

The sentencing court was justified in departing based on the above findings of fact which are supported by evidence in the record and which, when considered as a whole, constitute substantial and compelling circumstances justifying departure.

## OPPRESSION OR CORRUPT MOTIVE

In 1995, K.S.A. 1994 Supp. 21-4721(e) was amended to state as follows: "In any appeal, the appellate court may review a claim that: (1) A sentence that departs from the presumptive sentence resulted from partiality, prejudice, oppression or corrupt motive." L. 1995, ch. 251, § 17.

The State contends that prejudice refers to the mental attitude or disposition of the judge toward a party in the litigation. *State, ex rel., v. Sage Stores, Co.*, 157 Kan. 622, 626, 143 P.2d 652 (1943). According to the State, the sentencing court had a low opinion of the intended victim and also had a low opinion of the State for prosecuting the defendant; thus, the judge decided to sentence the defendant leniently.

The State bases its contention that the sentencing court had a low opinion of the victim and the State on the following comments made by the sentencing court:

"I'm aware of the what the facts are that gave rise to the . . . to your actions in this case. I know your brother got stabbed by this Willard LaGrange and I know Willard LaGrange. He stood in front of me just like you have a couple of times. . . . And you know, Willard LaGrange has been in court enough he probably knows what a charge ought to be maybe more so than the county attorney. I don't know. But he's got a bunch of cases against me [*sic*], but that's not any worry of yours right now.

 . . . .

"And yeah, it is rather interesting that the guy who stabs your brother, it's determined that he is charged with something and he's probably—I don't know

if he's in prison or not. I didn't have that case; it was across the hall. But he was charged with a lesser crime than you were. . . .

. . . .

". . . I look at the facts of this case and I see them differently than the county attorney does. I see them more along the line that Willard LaGrange does. . . .

". . . I see this as an aggravated assault case."

According to the State, these comments indicate that the sentencing court was attempting to "jab" at the prosecutor for charging the defendant with attempted murder and also indicate that the sentencing court felt sympathy toward the defendant based on the crime LaGrange was charged with. The State contends that if the sentencing court thought the facts only supported a conviction for aggravated assault, then, instead of acting with prejudice at the sentencing, the sentencing court should have refused to find the defendant guilty of attempted murder.

The trial court's comments do not reach the level of partiality, prejudice, oppression, or corrupt motive as required under K.S.A. 1994 Supp. 21-4721(e)(1) to find a departure sentence improper. K.S.A. 1994 Supp. 21-4716(c)(2) specifically allows the sentencing court to take the PSI report, containing the victim's statement, into account when determining if mitigating circumstances exist. While 21-4716(b)(2)(G) only requires the sentencing court to review the victim impact statement when determining aggravating circumstances, this section was not meant to imply that sentencing courts could not refer to victims' statements when determining mitigating factors if they so choose. Thus, the sentencing court's reference to and reliance on the victim's statement was appropriate.

Further, in *State v. Gideon*, 257 Kan. 591, 894 P.2d 850 (1995), the defendant argued that the court's reliance on the victim's family's inflammatory statements resulted in a hard-40 sentence based on passion and prejudice. This court stated that the sentencing court gave ample reasons to impose the hard-40 sentence which were not related to the potentially prejudicial statements; thus, the defendant had not shown the sentence resulted from passion or prejudice. 257 Kan. at 608. The same type of analysis may be applied here. While the sentencing court may have been prejudiced toward the victim and the State, it is clear that the court relied on

ample reasons which were not related to its potentially prejudicial attitude in granting the departure sentence. The court also based the sentence on the fact that, *inter alia*, the defendant had impaired judgment due to his brother's stabbing. Thus, the sentence was not based on partiality, prejudice, oppression, or corrupt motive under 21-4721(e)(1).

## EXTENT OF DEPARTURE

The last issue concerns the extent to which a sentencing court may depart. The State argues that the sentence imposed was "clearly too lenient." The "clearly too lenient" language originates from a Washington statute which states that a sentence may be reviewed on the basis "that the sentence imposed was clearly excessive or clearly too lenient." Wash. Rev. Code § 9.94A.210(4) (1994 Supp.). The State contends that no reasonable person would agree with a departure from a 51 to 59 month sentencing range (the defendant's presumptive sentence) down to 14 months' incarceration and the grant of 36 months of community corrections for the crime of attempted second-degree murder. In making this argument, the State cites to *State v. Sanchez*, 69 Wash. App. 195, 208, 848 P.2d 735, *rev. denied* 121 Wash. 2d 1031 (1993), which states that a valid departure sentence must have some basis in the record.

In Kansas, as the Court of Appeals dissent points out, there is no statutory limitation for downward durational departure, nor is there a provision allowing review of the sentencing court's extent of departure. 21 Kan. App. 2d at 216. *Cf.* K.S.A. 1994 Supp. 21-4719(b)(2) (limitation on upward durational departure). Further, the only statutory restriction on a nonprison dispositional departure concerns the length of probation granted by the sentencing court. K.S.A. 1994 Supp. 21-4719(d); K.S.A. 1994 Supp. 21-4611(c). The sentencing court here met this restriction by sentencing the defendant to 36 months' probation as required for a level 3 person felony. K.S.A. 1994 Supp. 21-4611(c)(1)(A). *Cf.* K.S.A. 1994 Supp. 21-4719(c)(2) (limitations on prison term dispositional departures.) Furthermore, K.S.A. 1994 Supp. 21-4721(d) states:

"(d) In any appeal from a judgment of conviction imposing a sentence that departs from the presumptive sentence prescribed by the sentencing grid for a crime, *sentence review shall be limited to* whether the sentencing court's findings of fact and reasons justifying a departure:
(1) Are·supported by the evidence in the record; and
(2) constitute substantial and compelling reasons for departure." (Emphasis added.)

This statute does not explicitly provide for review of a sentencing court's extent·of departure.

However, K.S.A. 1994 Supp. 21-4719(b)(1) states:

"(b) When a sentencing judge departs in setting the *duration* of a presumptive term of imprisonment: (1) The judge shall consider and apply the enacted purposes and principles of sentencing guidelines to impose a sentence which is *proportionate* to the severity of the crime of conviction and the offender's criminal history." (Emphasis added.)

This statute could·be interpreted as some type of restriction on downward durational departures. It makes sense that if departure sentences are reviewable by the appellate court, then the extent of departure would also be reviewable. Further, the Summary of Recommendations ·of the Sentencing Commission found that a sentencing court's discretion as to the extent of departure should be consistent with the intent and purposes· of the guidelines. The Commission found that to rule otherwise would eviscerate one of the main purposes of the guidelines to provide consistency in sentencing.· See Coates, Summary of the Recommendations of the Sentencing Commission, p. 10 (Report to Senate Committee on Judiciary, January 14, 1992). We hold· 21-4719(b)(1) places limits on the sentencing court's extent of departure. Thus, this court has jurisdiction to review the extent of downward durational departures.

The State seems to assume that abuse of discretion is the appropriate standard to use in reviewing the sentencing court's extent of departure. This assumption is based partly on Washington case law, where appellate courts·review a sentence to determine if it is "clearly too lenient" or excessive using an abuse of discretion standard. See *State v. Sanchez*, 69 Wash. App. at 200. Further, the Minnesota courts appear to give great deference to the sentencing

court's departure sentence and the extent of such departure, especially when the sentencing court departs downward durationally or imposes a nonprison dispositional departure. *State v. Dokken,* 487 N.W.2d 914 (Minn. App. 1992). Oregon does not appear to speak to this issue.

However, the Kansas Sentencing Commission appears to recommend a "substantial and compelling" de novo standard of review in its statement:

"Although appellate review of indeterminate sentences based on an *'abuse of discretion' standard of review* does work to correct clearly aberrational sentences, it *has not resulted in less sentencing disparity* or in the development of a body of principled decisions to guide sentencing judges in future cases." Kansas Sentencing Commission, Recommendations of the Kansas Sentencing Commission, p. 84, January 15, 1991.

"Any departure from a presumptive sentence should accord with the sentencing purposes and principles that underlie these rules. More directly, this rule requires the magnitude of the durational departure be commensurate with the seriousness of the crime of conviction and the offender's criminal history." Kansas Sentencing Commission, Recommendations of the Kansas Sentencing Commission, p. 93, January 15, 1991.

This court's power to review the extent of a downward durational departure is premised on an inference from a statute. Since the legislature did not find it necessary to specifically state that this court has the power to review the extent of departure, we do not believe that the legislature intended to allow the court the power to review the extent of sentences de novo. Rather, since the power to review the extent of departure is based on a mere inference, the court should not give itself more power than the legislature intended. Thus, our review should be limited to the weakest type of review—abuse of discretion. If the legislature wishes the court to have greater review power, it should specifically and clearly grant such power. Further, determining the appropriate extent of departure and whether the sentence is proportionate to the severity of the defendant's crime of conviction is more of a fact question. Thus, deference should be granted to the sentencing judge, who has had first-hand experience with the defendant and the facts of the case, in determining the extent of departure.

Under an abuse of discretion standard of review, the question is whether the extent of the sentencing court's durational departure is consistent with the "enacted purposes and principles of [the] sentencing guidelines" and "proportionate to the severity of the crime of conviction and the offender's criminal history." K.S.A. 1994 Supp. 21-4719(b)(1). In answering this question, the State points out that a trial court abuses its discretion if no reasonable person could agree with the trial court. *State v. Griffin*, 246 Kan. 320, 326, 787 P.2d 701 (1990); *Hoffman v. Haug*, 242 Kan. 867, 873, 752 P.2d 124 (1988). If any reasonable person could agree, the appellate court will not disturb the trial court's decision.

The State contends that no reasonable person could agree with the sentencing court's reduction of the defendant's guidelines sentence from 51 months to 59 months in prison for attempted murder down to 14 months based on the court's "aggravated assault" rationale.

On the other hand, the defendant argues the sentencing court did not abuse its discretion in the extent of the durational departure imposed because the court had a valid basis for such a decision. According to the defendant, the sentencing court complied with the requirements of K.S.A. 21-4719(b) by imposing a sentence which was proportionate to the severity of the crime of conviction and the offender's criminal history. The defendant reasoned that while he may have pled no contest to attempted murder, the sentencing court found that the *severity* of his crime of conviction was more commensurate with aggravated assault and, thus, the court sentenced him accordingly. As such, the defendant contends the sentencing court did not abuse its discretion.

We cannot say no reasonable persons would agree with the extent of the sentence imposed on the defendant in this case. Thus, the sentencing court did not abuse its discretion. We uphold both the durational and dispositional departure sentence imposed by the sentencing court.

The judgment of the Court of Appeals is reversed, and the judgment of the district court is affirmed.

ALLEGRUCCI and SIX, JJ., concur in the result.

LARSON, J., not participating.

STEPHEN D. HILL, District Judge, assigned.