(257 P.3d 849)
No. 102,036

STATE OF KANSAS, *Appellee*, v. MARLIN WILLIAMS, *Appellant*.

Opinion filed July 8, 2011.

*Michelle Davis*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, for appellee.

Before MALONE, P.J., PIERRON and ARNOLD-BURGER, JJ.

PIERRON, J.: Marlin Williams appeals his conviction of aggravated trafficking. He asserts the aggravated trafficking statute is unconstitutionally vague and overbroad; the prosecutor committed misconduct during closing arguments; he should have been sentenced for the crime of promoting prostitution under the identical offense doctrine, that promoting prostitution is a more specific crime than the general crime of aggravated trafficking; and his sentence was improperly increased without his criminal history proven to a jury beyond a reasonable doubt.

In April 2007, L.M., whose date of birth is October 10, 1991, ran away from the Wichita Children's Home and lived with a friend's aunt for about a month. One day late in April or early May, L.M. went outside to smoke a cigarette and began talking with the driver of a car that was parked outside. A white female, identified as Nikki, was sitting in the passenger seat. The driver of the car, who introduced himself as "Pressure," was subsequently identified as Williams. Williams and L.M. engaged in small talk and Williams said to L.M., "[Y]ou ain't ready for this." Taken in context, L.M. understood that Williams was referring to prostitution.

A few minutes after L.M. went back inside the house, Nikki came to the door and told L.M. that Williams wanted to speak with her. Williams asked L.M. her age; L.M. lied and said she was 17. L.M. agreed to get in the car and to travel to Texas that night. Williams also discussed going to Atlanta and Louisiana. L.M. understood that those were places where "you travel and ho at." Williams told L.M. that he did not like "his girls" looking at any other men; he wanted them to look down and not speak unless he gave them permission. L.M. asked if she could go home to get her clothes and makeup, but Williams refused and stated that he would buy her "all new things."

Williams drove to a friend's house and went inside while L.M. and Nikki stayed in the car. L.M. questioned Nikki about how Williams' prostitution operation worked. Williams then returned to the car and drove to another friend's house. L.M. and Nikki accompanied Williams inside, where Williams instructed both girls to take off their clothes so he could look at them. Williams, L.M., and Nikki returned to the car and made another stop to pick up a man named Casper. Williams told L.M. that she was too pretty to be working on the streets and suggested that once he saved up enough money he would open a club where she could work. Williams also stated that L.M. and Nikki were "all he got" because "his bottom bitch was in jail." L.M. understood this was a reference to "the ho that's been with him the longest."

Upon arrival in Dallas, Texas, the group checked into a small hotel. Williams instructed Casper to go with Nikki to wash her clothes, leaving L.M. alone with Williams. Williams requested oral sex from L.M.; L.M. complied because she felt she had to. After Nikki returned to the room, Williams gave L.M. eight condoms and a "beeper phone." Williams had previously instructed L.M. on the price she was to charge for oral sex and intercourse, and he told her not to come back without at least $400. Williams told L.M. that if she ran out of condoms she would have to buy them with the money she made or "make the guys pay for them." L.M. left the hotel and began performing sex acts on customers, or "tricks," in exchange for money. L.M. charged $40 to $50 for oral sex and $80 to $100 for intercourse, and she made approximately $500 that first day. L.M. continued to work the streets for 10 to 12 hours each day. Williams always told L.M. when it was time for her to go out and would call her while she was out to find out where she was and how much money she had made.

On May 4, 2007, Detective Michael McMurray of the Dallas Police Department was patrolling an area known for prostitution activity when he observed L.M. walking along the highway. McMurray saw a vehicle stop near L.M., but L.M. saw McMurray and kept walking. McMurray then made contact with L.M. at a gas station and questioned whether she was working as a prostitute and asked for her name and date of birth. L.M. initially provided

McMurray with false information but eventually told him her real name and birth date. Upon learning L.M.'s true identity, McMurray discovered that she had been reported as a runaway out of Wichita and transported her to police headquarters for an interview. L.M. gave McMurray permission to examine her cell phone, which contained the name "Pressure" in its contact list.

After the interview, the police department transported L.M. to a juvenile detention facility and contacted Kansas law enforcement. L.M. stayed at the facility for 2 weeks until she was flown back to Wichita. Upon her arrival in Wichita, L.M. learned that Pressure's real name was Marlin Williams, and she spoke to law enforcement about what had occurred in Dallas.

Williams was subsequently charged with one count of aggravated trafficking, contrary to K.S.A. 21-3447(a)(2), amended in 2010 to aggravated human trafficking. See K.S.A. 2010 Supp. 21-3447.

At trial, Williams admitted that he had been in Dallas during the time alleged by L.M., but claimed that he went there to shop with his current wife, their son, and his wife's niece. Williams denied meeting L.M. in Wichita and traveling to Dallas with her. He testified he had first met L.M. in Dallas and gave her his phone number then.

A jury found Williams guilty as charged. The district court imposed a downward durational departure sentence of 246 months' imprisonment. Williams timely appeals.

*Is the Aggravated Trafficking Statute Unconstitutionally Overbroad?*

Williams first contends that the subsection of the aggravated trafficking statute he was convicted under, K.S.A. 21-3447(a)(2), is unconstitutionally overbroad. Specifically, he claims the statute prohibits constitutionally protected activity such as speech and travel.

At the conclusion of the State's case, Williams raised this issue before the district court, asserting that the aggravated trafficking statute was overbroad and infringed upon protected activity. The court rejected Williams' argument, holding that he could not show that the statute was overbroad as applied to him.

Whether a statute is unconstitutionally vague or overbroad is a question of law subject to unlimited review. *State v. Brown*, 280 Kan. 898, 899, 127 P.3d 257 (2006). A statute is presumed constitutional and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the court has the authority and the duty to do so. *State v. Laturner*, 289 Kan. 727, 735, 218 P.3d 23 (2009). The overbreadth doctrine should be "employed sparingly and only as a last resort." *State v. Whitesell*, 270 Kan. 259, 271, 13 P.3d 887 (2000).

"While a vague statute leaves persons of common intelligence to guess at its meaning, an overbroad statute makes conduct punishable which under some circumstances is constitutionally protected. Almost every law is potentially applicable to constitutionally protected acts. A successful overbreadth challenge can thus be made only when (1) the protected activity is a significant part of the law's target, and (2) there exists no satisfactory method of severing that law's constitutional from its unconstitutional applications." 270 Kan. 259, Syl. ¶ 6.

The relevant portion of the aggravated trafficking statute defines the offense as

"recruiting, harboring, transporting, providing or obtaining, by any means, a person under 18 years of age knowing that the person, with or without force, fraud, threat or coercion, will be used to engage in forced labor, involuntary servitude or sexual gratification of the defendant or another." K.S.A. 21-3447(a)(2).

In arguing that the statute is overbroad, Williams argues that it "effectively prohibits dating between high school students" because the statute is potentially applicable to certain constitutionally protected acts, including requesting a date with a minor, encouraging a minor to flirt with another, and transporting a minor to prom or to a location where minors will play the game of spin the bottle.

Williams also alleges the statute is overbroad because it applies to minors who are legally married and constitutes "an unwarranted and intolerable intrusion into the marital relationship."

Generally, a defendant to whom a statute may be constitutionally applied cannot challenge the statute on the ground that it may conceivably be applied unconstitutionally in circumstances not before the court. *State v. Neighbors*, 21 Kan. App. 2d 824, 828, 908 P.2d 649 (1995). However, "[a] special standing rule permits a

party to raise overbreadth when a statute purports to regulate the First Amendment rights of others." 21 Kan. App. 2d at 829. Because Williams' allegations may tangentially touch on certain First Amendment rights, his overbreadth argument is properly before us.

While Williams spends a significant portion of his brief discussing why there is no satisfactory way to sever the constitutional from its unconstitutional applications, he fails to acknowledge or discuss the first requirement for a successful overbreadth challenge: the protected activity must be a significant part of the law's target. As noted by the district court, the acts set forth by Williams are not a significant part of the conduct targeted by the aggravated trafficking statute.

Our Supreme Court's decision in *State v. Wilson*, 267 Kan. 550, 987 P.2d 1060 (1999), is instructive. In *Wilson*, defendants were convicted of endangering a child in violation of K.S.A. 21-3608, which prohibits "intentionally and unreasonably causing or permitting a child under the age of 18 years to be placed in a situation in which the child's life, body or health may be injured or endangered." On appeal, defendants alleged the statute was unconstitutionally overbroad because it prohibited lawful conduct and activities such as parents allowing their children to play football, despite the great likelihood of injury. The *Wilson* court rejected this argument, noting that "courts will not give strained meanings to legislative language through a process of imaginative hypothesizing; a common-sense interpretation of the statute is the guiding principle." 267 Kan. at 557. The court held that because the statute "only prohibits 'unreasonably' permitting a child to be placed in dangerous circumstances," a common-sense interpretation of the statute would prevent prosecution for such parental acts as allowing a child to play football. 267 Kan. at 558.

As previously stated, "[a]lmost every law is potentially applicable to constitutionally protected acts." *Whitesell*, 270 Kan. 259, Syl. ¶ 6. This alone does not render the statute unconstitutional.

"A criminal statute should not infringe upon the First Amendment in an unconstitutional manner. The First Amendment, however, is not an impenetrable shield which protects any speech or conduct, whatsoever, with disregard to its

harm and effect. Despite our First Amendment rights, we are not free to harm others under the guise of free speech." 270 Kan. at 271.

When read in its entirety, K.S.A. 21-3447(a)(2) is clearly aimed at preventing the exploitation of minor children. The statute only applies where the offender knows that a child will be used to engage in forced labor, involuntary servitude, or sexual gratification of the offender or another. "The State has a compelling interest in the well-being of its children and in the exercise of its police powers may enact legislation to protect children from adult predators." *State v. Taylor*, 33 Kan. App. 2d 284, 286, 101 P.3d 1283 (2004), *rev. denied* 279 Kan. 1010 (2005).

Williams' argument ignores the common-sense approach discussed in *Wilson*. A common-sense interpretation of K.S.A. 21-3447(a)(2) prevents prosecution for acts like dating, flirting, driving a minor to the prom, or other similar conduct by legally married minors. Such activities are not a significant part of the law's target. As a result, K.S.A. 21-3447(a)(2) is not unconstitutionally overbroad.

*Is the Aggravated Trafficking Statute Unconstitutionally Vague?*

Williams also challenges K.S.A. 21-3447(a)(2) as unconstitutionally vague. Again, the appellate court exercises unlimited review over claims that a statute is vague or overbroad. *Brown*, 280 Kan. at 899.

Constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *State v. Leshay*, 289 Kan. 546, 553, 213 P.3d 1071 (2009). Williams acknowledges that he did not raise a specific vagueness claim below, but argues that we may nevertheless address the issue on appeal because (1) it involves only a question of law and is finally determinative of the case, and (2) consideration of the issue is necessary to prevent a denial of a fundamental right. See *State v. Shopteese*, 283 Kan. 331, 339, 153 P.3d 1208 (2007).

As noted by the State, however, this same argument was rejected by our Supreme Court in *State v. Papen*, 274 Kan. 149, 161-62, 50 P.3d 37, *cert. denied* 537 U.S. 1058 (2002). Moreover, as the State points out, Williams does not argue that his conduct is not covered

by the statute. Because the statute may be constitutionally applied to him, he is not allowed to argue that it may be applied unconstitutionally in situations not before this court. *Neighbors*, 21 Kan. App. 2d at 828.

"A statute must be sufficiently definite to meet due process standards. The test to determine whether a criminal statute is unconstitutionally vague is whether its language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. A statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process. [Citation omitted.] In determining whether a statute is void for vagueness, two inquiries are appropriate: (1) whether the statute gives fair warning to those persons potentially subject to it and (2) whether the statute adequately guards against arbitrary and discriminatory enforcement. [Citation omitted.]" *Neighbors*, 21 Kan. App. 2d at 826.

Williams claims that K.S.A. 21-3447(a)(2) is vague because it does not define the terms "used" and "sexual gratification." He argues that because persons of ordinary intelligence are left uncertain as to what these terms mean, the statute invites arbitrary and discriminatory enforcement. He also incidentally suggests that the statute is vague because it contains contradictory and unintelligible language.

When interpreting a statute, common words are given their ordinary meanings. *State v. Raschke*, 289 Kan. 911, 914, 219 P.3d 481 (2009). When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. *State v. Trautloff*, 289 Kan. 793, 796, 217 P.3d 15 (2009).

Williams is correct that K.S.A. 21-3447 does not expressly define the term "sexual gratification." However, we may look at how the term has been used in other contexts within the Kansas statutes for guidance. The Kansas Offender Registration Act requires those who have committed certain specified sex offenses to register on publicly available lists. See K.S.A. 2010 Supp. 22-4902; K.S.A. 2010 Supp. 22-4904(a)(1). A sex offender includes a person convicted of a "sexually violent crime." K.S.A. 2010 Supp. 22-4902(b)(c). A "sexually violent crime" includes certain specified crimes, as well as

"any act which at the time of sentencing for the offense has been determined beyond a reasonable doubt to have been sexually motivated. As used in this subparagraph, 'sexually motivated' means that one of the purposes for which the defendant committed the crime was for the purpose of the defendant's sexual gratification." K.S.A. 2010 Supp. 22-4902(c)(16).

The term "gratify" is defined as "to please or satisfy." Webster's II New College Dictionary 486 (1999). Our court has had no difficulty in determining that certain crimes were committed for a defendant's sexual gratification. See, *e.g., State v. Gallardo*, 43 Kan. App. 2d 346, 352, 224 P.3d 1192 (2010) (finding that conviction for unlawful sexual relations was committed for defendant's sexual gratification); *State v. Chambers*, 36 Kan. App. 2d 228, 240, 138 P.3d 405, *rev. denied* 282 Kan. 792 (2006) (finding that conviction of burglary was committed for defendant's sexual gratification where defendant broke into residences for the sole purpose of stealing women's lingerie to facilitate masturbation); *State v. Lopez*, 25 Kan. App. 2d 777, 778, 973 P.2d 802 (1998), *rev. denied* 266 Kan. 1113 (1999) (finding that crime of attempted aggravated burglary was sexually motivated where victim awoke in the middle of the night to find defendant standing over her naked); *State v. Patterson*, 25 Kan. App. 2d 245, 251, 963 P.2d 436, *rev. denied* 265 Kan. 888 (1998) (finding that conviction of burglary and theft in connection with stealing woman's underwear was sexually motivated where defendant kept the underwear in a locked cabinet containing pornographic material). As demonstrated by these decisions, the absence of a specific definition in K.S.A. 21-3447 does not force a person of ordinary intelligence to guess as to the meaning of the term "sexual gratification."

Similarly, the term "used" is defined as "[t]o bring or put into service or action." Webster's II New College Dictionary 1215 (1999). Although K.S.A. 21-3447 does not expressly define the term "used," its meaning is clear and is not susceptible to confusion, especially when it is read in context with the rest of the statutory language, "used to engage in . . . sexual gratification."

We conclude K.S.A. 21-3447(a)(2) is not unconstitutionally vague.

*Prosecutorial Misconduct During Closing Argument*

Williams next contends that the prosecutor committed misconduct during closing argument by improperly commenting on credibility and shifting the burden of proof.

Although Williams did not object to all of the prosecutor's comments he now challenges on appeal, a claim of prosecutorial misconduct based on comments made during closing argument which are not evidence will be reviewed on appeal even when a contemporaneous objection was not made at trial. *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009).

Appellate review of an allegation of prosecutorial misconduct involving improper comments to the jury requires a two-step analysis. First, the appellate court decides whether the comments were outside the wide latitude that the prosecutor is allowed in discussing the evidence. Second, if misconduct is found, the appellate court must determine whether the improper comments constitute plain error; that is, whether the statements prejudiced the jury against the defendant and denied the defendant a fair trial. *State v. McReynolds*, 288 Kan. 318, 323, 202 P.3d 658 (2009).

Williams first complains of the following comments, claiming that they constituted improper comment on credibility by the prosecutor:

"[L.M.] does not minimize her own immoral acts of what happened in this case. Doesn't that actually lend credibility to what it is that she's telling you?

"What about [Williams'] credibility? . . . .

. . . .

"[Williams'] credibility. He can't come up with the simplest details to fend the basis of the story— . . . .

". . . Yes, [L.M.] has had a horrible life. Doesn't that make her even more credible, then?"

It is generally improper for a prosecutor to offer personal opinion as to the credibility of witnesses, including the defendant. See *State v. Elnicki*, 279 Kan. 47, 60, 105 P.3d 1222 (2005). However, prosecutors are given wide latitude to craft an argument that includes reasonable inferences based on the evidence. When a case turns on which version of two conflicting stories is true, it may be reasonable to argue that certain testimony is not believable, so long

as the ultimate conclusion on credibility is left to the jury. See *State v. Pabst*, 268 Kan. 501, 507, 996 P.2d 321 (2000). For example, it is "not improper" for a prosecutor to offer "comments during closing arguments regarding the witness' motivations to be untruthful." *King*, 288 Kan. at 353. But a prosecutor must do so without stating "his or her own personal opinion concerning a witness' credibility," *State v. Albright*, 283 Kan. 418, 431, 153 P.3d 497 (2007), and without "accus[ing] a defendant of lying." *State v. Davis*, 275 Kan. 107, 121, 61 P.3d 701 (2003).

When read in context, it is clear that the prosecutor's comments were proper comments on the evidence. Throughout the prosecutor's closing argument, she pointed to evidence that supported L.M.'s credibility while casting doubt on Williams' version of events. The prosecutor commented that L.M. had never wavered in identifying Williams as the man "who did this to her" and argued that because L.M. had no prior relationship with Williams, she had no motive to fabricate the allegations. When discussing Williams' credibility, the prosecutor summarized Williams' testimony and argued his explanation for being in Dallas to shop with his wife was not believable and that it was unrealistic to believe that he would stay in an area of Dallas known for prostitution if he was there with his wife and two young children.

A prosecutor can "explain the legitimate factors which a jury may consider in assessing witness credibility and may argue why the factors present in the current case should lead to a compelling inference" regarding credibility. *State v. Scaife*, 286 Kan. 614, Syl. ¶ 5, 186 P.3d 755 (2008). Because Williams' testimony differed from L.M.'s in almost every respect, the case obviously turned on the jury's assessment of witness credibility. As such, it was appropriate for the prosecutor to argue that the evidence, and reasonable inferences therefrom, supported L.M.'s testimony. The prosecutor did not give a personal opinion on the credibility of L.M. or Williams or refer to Williams as a liar; she merely commented on their conflicting stories and pointed to specific evidence that supported L.M.'s testimony and explained why, in light of the evidence presented, Williams' story was not feasible. This comment on the ev-

idence was permissible and was not outside the wide latitude afforded to the prosecutor when making her closing argument.

Williams also complains of the following comment made during the prosecutor's rebuttal, "Where are all these witnesses? . . . Guess what, ladies and gentlemen. The defense has subpoena power identical . . . to the State." Williams suggests that this comment improperly shifted the burden of proof to the defense.

Contrary to Williams' argument, a review of the closing arguments in their entirety reveals that the prosecutor's comment was merely a response to the following statement made by defense counsel during closing argument:

"I want you to think about the evidence and as[k] yourselves, why isn't there more? Wouldn't there be more if it really happened like she said? Wouldn't there be some other people coming to court and saying, I was at that party. I saw Marlin drive over there. I was there when that girl was there. When [L.M.] was there, I saw her and I saw Marlin. That's all the State needed, and they couldn't produce it. They couldn't find one witness, even though [L.M.] has told them names that may not even exist."

"No prejudicial error occurs where the questionable statements by a prosecuting attorney are provoked and made in response to prior arguments or statements by defense counsel." *McReynolds*, 288 Kan. at 325. Here, the prosecutor was clearly responding to defense counsel's suggestion that the State did not prove its case because it failed to call additional witnesses to testify; the prosecutor's comment simply reminded the jury that the defense also had the power to subpoena witnesses. The prosecutor did not in any way suggest that Williams had the burden to prove his innocence.

When all the complained-of comments are reviewed in context, it is clear that the prosecutor was either making fair comments on the evidence or responding to defense counsel's arguments. Moreover, the jury was instructed that it was responsible for determining the weight and credibility to be given the testimony of each witness and that the State had the burden of proof. Because Williams cannot show that any of the comments were outside the wide latitude afforded a prosecutor during closing argument, his claim necessarily fails.

*Are Aggravated Trafficking and Promoting Prostitution Identical Offenses?*

Williams next challenges the sentence the district court imposed for his conviction of aggravated trafficking. Williams argues that aggravated trafficking as charged in this case is identical to promoting prostitution and, therefore, under the identical offense doctrine, he should have received the lesser of the two penalties. Whether the identical offense sentencing doctrine applies is a question of law, subject to de novo review. *State v. Sandberg*, 290 Kan. 980, 984, 235 P.3d 476 (2010).

Prior to sentencing, Williams filed a motion alleging that he should be sentenced for the crime of promoting prostitution because it has a lesser penalty than aggravated trafficking, and that under the identical offense doctrine he could only be sentenced under the lesser of the two severity levels. The district court denied the motion and sentenced Williams to 246 months' imprisonment for aggravated trafficking.

"The governing principle of the identical offense doctrine is: 'Where two criminal offenses have identical elements but are classified differently for purposes of imposing a penalty, a defendant convicted of either crime may be sentenced only under the lesser penalty provision.' [Citation omitted.]" *State v. Cooper*, 285 Kan. 964, 966-67, 179 P.3d 439 (2008). Offenses are identical when they have the same elements. Where two statutes contain overlapping provisions, the facts of the case must be considered to determine which provisions of the challenged statute apply. Then the elements of the pertinent provision are compared with the allegedly identical offense to see whether the overlapping provisions contain identical elements. 285 Kan. at 966-67.

As charged in this case, aggravated trafficking required the State to prove that Williams "recruit[ed], harbor[ed], transport[ed], provid[ed], or obtain[ed], by any means, a person under the age of 18 years of age knowing that the person, with or without force, fraud, threat or coercion, will be used to engage in forced labor, involuntary servitude or sexual gratification of the defendant or another." K.S.A. 21-3447(a)(2). The penalty for this offense is a severity level 1 person felony. K.S.A. 2-3447(b).

The overlapping portion of the promoting prostitution statute defines the offense as "inducing another to become a prostitute" or "transporting a person within this state with the intention of assisting or promoting that person's engaging in prostitution." K.S.A. 21-3513(a)(4), (7). The penalty for commission of this offense is a severity level 6 person felony. K.S.A. 21-3513(b)(3). Prostitution is defined as

"performing for hire, or offering or agreeing to perform for hire where there is an exchange of value, any of the following acts:
   (1) Sexual intercourse;
   (2) sodomy; or
   (3) manual or other bodily contact stimulation of the genitals of any person with the intent to arouse or gratify the sexual desires of the offender or another." K.S.A. 21-3512(a).

While the elements of the two offenses certainly overlap, they are not identical. The most obvious distinction is that in order to prove the offense of promoting prostitution, the State must prove that an offender intended for the victim to engage in prostitution, *i.e.,* "an exchange of value." K.S.A. 21-3512(a). No similar proof is required to prove the crime of aggravated trafficking. Additionally, the victim's age is a necessary element of K.S.A. 21-3447(a)(2), but it is not an element of K.S.A. 21-3513. Finally, K.S.A. 21-3513(a)(7) prohibits "transporting a person within this state," while K.S.A. 21-3447(a)(2) does not limit transportation to within the state.

Under the facts of this case, the State might have successfully prosecuted Williams for aggravated trafficking and/or promoting prostitution. However, the test is not whether the facts would support an alternative charge but whether the applicable elements of the charged offense are identical to the elements of an offense imposing a lesser penalty, *i.e.,* what facts the State is required to prove to obtain a conviction. See *Cooper,* 285 Kan. at 967 (noting that though as a factual matter, paraphernalia must be present to manufacture methamphetamine, possession of paraphernalia is not an element of the crime of manufacturing methamphetamine). Because the elements of aggravated trafficking are not identical to the applicable elements of promoting prostitution, the offenses are

not identical. The district court did not err in imposing the penalty authorized by K.S.A. 21-3447(a)(2).

*Is Promoting Prostitution a More Specific Crime than Aggravated Trafficking?*

Williams also argues in the alternative that because his conduct was nonetheless prohibited by both statutes, he could only be convicted of promoting prostitution because it is a more specific offense than aggravated trafficking.

Whether one statute precludes application of another statute is an issue of statutory interpretation which involves the determination of legislative intent. Interpretation of a statute is a question of law over which our review is unlimited. *State v. Cott*, 288 Kan. 643, 645, 206 P.3d 514 (2009).

Williams acknowledges that he did not raise this argument before the district court but claims that this issue may be raised for the first time on appeal because it involves only a question of law and is finally determinative of the case. *Shopteese*, 283 Kan. at 339. The State suggests that our Supreme Court's decision in *State v. Gibbens*, 253 Kan. 384, 855 P.2d 937 (1993), prevents our consideration of this issue. The *Gibbens* court refused to reach the merits of a general-specific statute argument in part because the defendant did not raise the issue before the trial court. 253 Kan. at 387. However, *Gibbens* may be distinguished from the present case because it involved an appeal that was solely related to the sentence imposed following the defendant's plea and he had never previously challenged his convictions at any point. Therefore, because this issue involves only a question of law and is finally determinative of the case, it is properly before this court for review.

"When there is a conflict between a statute dealing generally with a subject and another statute dealing specifically with a certain phase of it, the specific statute controls unless it appears that the legislature intended to make the general act controlling." *State v. Williams*, 250 Kan. 730, Syl. ¶ 3, 829 P.2d 892 (1992). Stated another way:

"The rule that a general statute should yield to a specific statute covering the same criminal conduct is a rule of statutory construction designed to determine

legislative intent, and it must yield where there is a clear indication that the legislature did not intend for one statute to be the exclusive mechanism for punishing a given activity." *Cott*, 288 Kan. 643, Syl. ¶ 2.

In *Williams*, the defendant was charged with taking indecent liberties with a child. He moved to dismiss the charge, claiming that he should have been charged with aggravated incest because the victim was his 14-year-old step-granddaughter. The Supreme Court agreed. While both statutes prohibit the same sexual misconduct, the aggravated incest statute, which applied to a defendant who is related to the victim, is a more specific statute which controls over the more general statute prohibiting indecent liberties with a child. 250 Kan. at 736-37. When a defendant is convicted of a general crime instead of the more specific crime, the proper remedy is that he or she should be sentenced for the more specific crime. See *Carmichael v. State*, 255 Kan. 10, 15, 19, 872 P.2d 240 (1994).

Here, Williams argues that the aggravated trafficking and promoting prostitution statutes are aimed at preventing similar types of behavior and both can apply where children are involved. He contends that the promoting prostitution statute is more specific because it prohibits a person from assisting or facilitating another to perform a sexual act for hire, while the aggravated trafficking statute more generally prohibits a person from assisting or facilitating another knowing that the person will be used to engage in someone's sexual gratification.

Both parties rely on *Cott*, 288 Kan. 643, for support. In *Cott*, the defendant was charged with driving under the influence under K.S.A. 2005 Supp. 8-1567(a) and (d), and aggravated endangerment of a child under K.S.A. 2005 Supp. 21-3608a(a)(1) because her 4-year-old child was with her. Following the preliminary hearing, the trial court dismissed the child endangerment charge because a provision in the DUI statute enhances the sentence for DUI when a child less than 14 years of age is in the car, and held that the DUI statute was the more specific statute. On appeal, our Supreme Court reversed the trial court, reasoning:

"[F]or the general statute versus specific statute rationale to be applicable to the two crimes, this court would have to find that the child endangerment statute

must be viewed as a statute generally prohibiting certain conduct and the DUI statute as applying to the identical prohibited conduct by a person driving while under the influence. [Citation omitted.] Put another way, this court would have to determine that the DUI sentence enhancement provision proscribes for a certain class of persons conduct which is proscribed generally in the child endangerment statute. [Citation omitted.]" 288 Kan. at 648-49.

In reversing the trial court, the Supreme Court held that the two statutes aim to prevent different types of behavior. "[T]he focus of K.S.A. 2005 8-1567 is driving under the influence of alcohol or drugs, while K.S.A. 2005 Supp. 21-3608a(a)(1) is focused on conduct that intentionally and recklessly places a child under the age of 18 at risk of injury to life or health." 288 Kan. at 649. Therefore, there is no evident legislative intent to preclude a defendant from being charged under both statutes when the facts support both crimes.

Aggravated trafficking prohibits "recruiting, harboring, transporting, providing, or obtaining, by any means, a person under the age of 18 years of age knowing that the person, with or without force, fraud, threat or coercion, will be used to engage in forced labor, involuntary servitude or sexual gratification of the defendant or another." K.S.A. 21-3447(a)(2). In order to find Williams guilty of aggravated trafficking, the jury was instructed that the State had to prove Williams "did unlawfully recruit or transport" L.M. Williams contends that he should have been convicted of the more specific crime of promoting prostitution under K.S.A. 21-3513(a)(4) or (7). These subsections prohibit:

"(4) inducing another to become a prostitute;

. . . .

"(7) procuring transportation for, paying for the transportation of, or transporting a person within this state with the intention of assisting or promoting that person's engaging in prostitution."

It appears that the aggravated trafficking statute (recruiting or transporting an individual to engage in sexual gratification of defendant or another) is aimed at preventing similar types of behavior as the promoting prostitution statute (inducing or transporting an individual to engage in prostitution). The aggravated trafficking statute prohibits recruiting or transporting a person under 18 years

of age. K.S.A. 21-3447(a)(2). The promoting prostitution statute contains no similar age limit but does provide for a range of penalties depending on the ages of the offender and the victim. K.S.A. 21-3513(a)-(c). Thus, it is arguable that the aggravated trafficking statute prohibits a more general crime than the specific crime of promoting prostitution.

A specific statute does not control over a general statute if it appears the legislature intended to make the general statute controlling. *State v. Bee*, 288 Kan. 733, 738, 207 P.3d 244 (2009). To determine whether the legislature intended a general statute to control over a more specific statute, we may look to the historical background of the enactments, the circumstances attending their passage, the purposes to be accomplished, and the effects the statutes may have under the various constructions suggested. *State v. Phillips*, 289 Kan. 28, 32, 210 P.3d 93 (2009); *State v. Valladarez*, 288 Kan. 671, 678-79, 206 P.3d 879 (2009).

The crimes of human trafficking, K.S.A. 21-3446, and aggravated trafficking, K.S.A. 21-3447, were recently enacted by the Kansas legislature in 2005. See L. 2005, ch. 200, secs. 2-3. Testimony in support of the Senate Bill defines trafficking as "modern-day slavery" that "deals with taking people against their will for forced labor and involuntary servitude or for sexual exploitation." See Minutes, Sen. Judiciary Comm., February 16, 2005, attach. 13. Additional testimony requested that the aggravated trafficking statute be amended to remove the necessity of force if it involved a child under the age of 18. Although the trafficking statutes do not consider the citizenship status of the victim, the testimony generally indicated a primary concern with victims who are illegally brought into Kansas from other countries and claimed that a state trafficking law was necessary to clearly define the crime at the state level and to provide guidance to state and local law enforcement because federal officials are often only able to focus on high profile, high volume trafficking rings. See Minutes, Sen. Judiciary Comm., February 16, 2005. No mention of the promoting prostitution statute appears in the testimony, other than a brief reference by then-Attorney General Phill Kline. After discussing the necessity of the

human trafficking statutes, Kline urged the legislature to enhance penalties for other sex crimes, including promoting prostitution.

In enacting the human trafficking statutes, the legislature was focused on conduct involving forced labor and sexual exploitation. The promoting prostitution statute focuses on a specific form of sexual exploitation: prostitution, which is defined in part as "performing for hire . . . where there is an exchange of value." K.S.A. 21-3512(a). Based on the legislative history available, it does not appear that the legislature intended for the aggravated trafficking statute to control over the promoting prostitution statute or for prostitution cases to be charged solely under the human trafficking statutes. Accordingly, promoting prostitution might be considered a more specific crime than aggravated trafficking in some cases. However, this is not such a case.

Williams claims his conduct is more specifically prohibited under the promoting prostitution statute, namely, K.S.A. 21-3513(a)(4) and (7).

K.S.A. 21-3447(a)(2) does appear to proscribe similar conduct as K.S.A. 21-3513(a)(4). The aggravated trafficking statute prohibits, in relevant part, recruiting a person who will be used to engage in the sexual gratification of the defendant or another. K.S.A. 21-3447(a)(2). The promoting prostitution statute prohibits "inducing another to become a prostitute." K.S.A. 21-3513(a)(4). Prostitution includes "stimulation of the genitals of any person with the intent to arouse or gratify the sexual desires of the offender or another." K.S.A. 21-3512. Arguably, "recruiting" one to engage in sexual gratification and "inducing" one to become a prostitute involves the same conduct.

However, K.S.A. 21-3513(a)(7) prohibits transporting a person *within this state* to engage in prostitution, while K.S.A. 21-3447(a)(2) is not limited to transportation within the state. Thus, K.S.A. 21-3513(a)(7) does not proscribe the same conduct as and, therefore, cannot be considered a more specific statute than K.S.A. 21-3447(a)(2).

As previously stated, the jury was instructed that the State had to prove Williams "did unlawfully recruit *or* transport" L.M. (Emphasis added.) "In an alternative means case the jury must be unan-

imous as to guilt for the single crime charged, but need not be unanimous as to the particular means by which the crime was committed, so long as substantial evidence supports each alternative means. [Citation omitted.]" *State v. Becker*, 290 Kan. 842, 855, 235 P.3d 424 (2010). Here, there is no suggestion that the evidence does not support a finding of guilt on either means of committing aggravated trafficking. Indeed, there is substantial evidence in the record to support a finding that Williams both recruited *and* transported L.M. As a result, under these facts, promoting prostitution cannot be considered a more specific offense than aggravated trafficking.

Apprendi *Issue*

Finally, Williams claims the district court erred when it gave him an increased sentence based on prior convictions that were not proven to a jury beyond a reasonable doubt.

Williams concedes that this issue is controlled by *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002), but raises the issue to preserve it for federal review. In *Ivory*, our Supreme Court held that the use of criminal history scores is not unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). We are duty bound to follow Kansas Supreme Court precedent absent some indication the court is departing from its previous position. *State v. Merrills*, 37 Kan. App. 2d 81, 83, 149 P.3d 869, *rev. denied* 284 Kan. 949 (2007). Our Supreme Court recently reaffirmed its holding from *Ivory* in *State v. Ventris*, 289 Kan. 314, 318, 212 P.3d 162 (2009). Because our Supreme Court is not departing from its precedent, Williams' sentence must be upheld.

Affirmed.