No. 83,452

STATE OF KANSAS, *Appellant,* v. MAURICE T. MURPHY, *Appellee.*

(19 P.3d 80)

Opinion filed March 9, 2001.

*Angela M. Wilson,* assistant district attorney, argued the cause, *Christine Kenney Tonkovich,* district attorney, and *Carla J. Stovall,* attorney general, were with her on the brief for appellant.

*Kathleen A. Downey,* argued the cause, *Peter Maharry,* assistant appellate defender, and *Jessica R. Kunen,* chief appellate defender, were with her on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: The State of Kansas appeals from the trial court's downward departure from the sentencing guidelines for aggravated robbery and kidnapping and on a question reserved of the trial court's dismissal of first-degree felony-murder charges. We affirm the trial court on the departure and deny the appeal on the question reserved.

The trial court relied on the following facts established in the preliminary hearing in dismissing the felony-murder charge.

In the early morning hours of May 27, 1998, Dustin Welch, Jimmy Johnson, and Maurice Murphy entered a house in Lawrence occupied by Trampas 'Will' Hutchinson, James Read, Joseph Vervynk, Jillian Prather, and Nichole McMannes. Hutch-

inson was awakened by Murphy, Johnson, and Welch. They ordered him to give them all of his valuables. The two men closest to the bed were armed and the third held a flashlight. The intruders eventually woke all of the occupants of the house and ordered them at gunpoint to surrender their valuables. During the incident, the intruders ordered the occupants of the house to move to various different rooms.

Hutchinson recognized one of the men as Johnson. Johnson ordered Hutchinson and Prather to return to their bedroom. Hutchinson gave all of his money to Johnson. When Johnson left the bedroom, Hutchinson picked up the handgun he kept hidden behind the end table next to the bed.

Hutchinson testified he looked into the hallway. The intruders were clustered in the hall, near the door to the bathroom, where several of the occupants had been placed. Hutchinson began shooting. He shot five or six times at the three intruders. He was not firing at one intruder in particular. There was a loud yell and the intruders left. He walked into the hall and found Johnson lying on the floor. Johnson was fatally wounded by the shots and died. Both Read and Prather testified that the intruders were talking about leaving immediately before the shots were fired.

Murphy, Welch, and James Hall, who was waiting outside in the get-away car, were charged with first-degree felony murder for the death of Johnson.

All three defendants moved to dismiss the felony-murder charges, arguing that the evidence produced at the preliminary hearing did not establish the elements of felony murder. Their contention was that since Johnson was killed by a victim of the felony and not by the act of any one of them, they cannot be held criminally responsible for his death. They also argued that since they were in the process of leaving the premises at the time Hutchinson killed Johnson, the killing did not occur during the commission of, attempt to commit, or flight from an inherently dangerous felony.

The trial court in a well-reasoned decision sustained the motion to dismiss the felony-murder count as to Murphy and the other defendants.

Murphy subsequently pled guilty to aggravated robbery and kidnapping. The trial court sentenced Murphy to 49 months on each count with the sentences to run concurrently. The trial court then granted Murphy's motion for a dispositional departure based on the evidence and contentions at the sentencing hearing, which we will set forth in detail in considering the departure issue, placed him on probation, and assigned him to the Labette Conservation Camp for a period of 6 months.

We first consider the State's appeal of the dispositional departure.

K.S.A. 1999 Supp. 21-4716 requires the sentencing judge to impose the presumptive sentence "unless the judge finds substantial and compelling reasons to impose a departure." In *State v. Valentine*, 260 Kan. 431, 438, 921 P.2d 770 (1996), we stated that in an appeal from a departure sentence an appellate court must determine whether the sentencing court's finding of fact and reasons justifying departure " '(1) are supported by substantial competent evidence and (2) constitute substantial and compelling reasons for departure as a matter of law.' " See K.S.A. 21-4721(d)(1) and (2).

The State has not contested the supporting evidence and its challenge is therefore limited to whether the factors considered by the court are substantial and compelling reasons for departure. This is a question of law upon which our review is unlimited *State v. Minor*, 268 Kan. 292, Syl. ¶ 7, 997 P.2d 648 (2000). If a departure sentence is issued the court shall state on the record at the time of sentencing the substantial and compelling reasons for the departure. K.S.A. 1999 Supp. 21-4716(a). The court's comments at the time of sentencing, not the written journal entry, govern as to the reasons for departure. *State v. Jackson*, 262 Kan. 119, 135, 936 P.2d 761 (1997).

The reasons stated by the court at the sentencing hearing are summarized as follows: The defendant had no prior criminal history, the defendant was only 19 years old, he did not instigate the incident, he had nothing to gain from the incident, the defendant was accepted in Labette Conservation Camp which has a reputation for 'good results,' the defendant has a supportive family, the defendant's employer reported he was a good worker, and the

judge felt that community safety would be enhanced because the defendant had a better chance of reformation in Labette than he did in prison.

None of the facts listed are contained in the K.S.A. 1999 Supp. 21-4716(b)(1) list of mitigating factors, but, as the statute indicates, it is a nonexclusive list.

Our leading case on downward departures is *State v. Favela*, 259 Kan. 215, 238, 911 P.2d 792 (1996), where we recognized that in cases in which the sentencing court does not rely upon any statutory aggravating or mitigating factors to depart its actions should be viewed with stricter scrutiny. We follow this direction in examining the trial court's reasons for departure.

The defendant's lack of criminal history was considered as a factor in *Favela* but only because his prior crimes were not very severe and 'out of character' for the defendant. In our case, Murphy was at severity level I with no prior criminal history. Therefore, his past history has clearly and fairly been taken into account on the criminal sentencing grid. By itself, this factor is not sufficient to justify a departure but could be considered in the overall picture.

Whether Murphy's age can be a factor has been decided in *Favela,* where we said:

"K.S.A. 1994 Supp. 21-4716(b)(2)(A) specifically lists the victim's young age as an aggravating factor but 21-4716(b)(1) says nothing about the defendant's young age being a mitigating factor. Even though the list of mitigating factors is nonexclusive, the doctrine of *expressio unius est exclusio alterius* applies here, and, thus, the legislature must not have intended for the defendant's young age to be a mitigating factor. The fact the defendant was only 17 years old at the time of the offense is not a substantial and compelling reason justifying departure as a matter of law, but it may be considered as part of the entire package." 259 Kan. at 235.

In our case, Murphy's age of 19 can be considered only as part of the entire package and is not in and of itself a sufficient justification for departure.

A good employment record was considered by the Court of Appeals as a positive factor for a downward departure, although it was expressly held not to be sufficient by itself. *State v. Crawford*, 21 Kan. App. 2d 859, 861, 908 P.2d 638 (1995). Thus, Murphy's employment record may be considered as another factor.

The additional factors considered by the court have not received specific approval or disapproval by Kansas Appellate Courts, but all should be considered when taken together in deciding whether substantial and compelling reasons exist for the departure.

The State argues that although there are many reasons to support the downward departure, there are also several reasons to deny it. The State points out that "[t]he defendant kidnaped and robbed five individuals at gunpoint while they were sleeping in their home. Further, he threatened them and took their valuables. During the commission of the crime, one of the defendant's accomplices was shot and killed by one of the victims." However, the kidnapping and robbing were the crimes for which Murphy was charged and pled guilty. These facts cannot be considered 'aggravating' factors that cancel out the mitigating factors discussed above. In addition, it appears the majority of threats originated from the alleged ring-leader, Dustin Welch.

The State points out that Murphy took valuables from the victims, but again, this is nothing more than an element of robbery. Finally, while it is true that one of the accomplices was shot and killed during the crime, nothing from the record implies that Murphy did anything to escalate the violence other than carrying a weapon. Again, carrying a weapon was an element of the crime to which Murphy pled guilty, namely aggravated robbery. The State's argument that there are more aggravating than mitigating factors is not convincing.

Murphy was only 19 years of age when this crime occurred. The record reflects that he was not an instigator of the crime. The record further reflects his employer considered him to be good worker. Murphy was accepted into Labette Conservation Camp. The court took judicial notice that Murphy had good family support. The court also took judicial notice of the fact that more positive results are seen from Labette than the prison system, which reaps a more favorable effect on overall public safety. Two purposes of the sentencing guidelines are protection of public safety and reservation of prison space for the most violent offenders. *Minor*, 268 Kan. at 307.

When considered as a whole the factors considered by the court and stated on the record are sufficient to constitute "substantial and compelling reasons for imposing a departure sentence in light of the offense of conviction, the defendant's criminal history, and the purpose of the sentencing guidelines." *State v. Grady*, 258 Kan. 72, 89, 900 P.2d 227 (1995). The trial court's departure sentence is affirmed.

Although well-briefed and argued by both parties in this appeal, the question reserved by the State pursuant to K.S.A. 22-3602(b)(3) is substantially similar to the facts and issue in a direct appeal of a felony-murder conviction. See *State v. Sophophone*, 270 Kan. 703, 19 P.3d 70 (2001).

In both Sophophone and this case, the death of a co-felon occurred during the commission of an inherently dangerous felony as enumerated in K.S.A. 21-3436, which is referred to by K.S.A. 21-3401(b).

In *Sophophone*, the killing resulted from the lawful act of a law enforcement officer. In *Murphy*, the killing resulted from the lawful act of a victim of the aggravated robbery and kidnapping acting in self-defense for the protection of his residence and the occupants thereof.

The reasoning for our findings and rulings in *Sophophone* are adopted as our decision herein. Additionally, the State here attempts to raise a vicarious liability theory that was not presented to the trial court either in response to Murphy's motion to dismiss or during the hearing on that motion. The argument is based on a California decision, *People v. Supreme Court (Bennett)*, 223 Cal. App. 3d, 1166, 273 Cal. Rptr. 71 (1990), which involved a different statute and charge than ours, and has no merit.

The downward departure sentence is affirmed; the State's appeal on a question reserved is denied.

MCFARLAND, C.J., and ABBOTT and DAVIS, JJ., dissenting.