No. 100,820

STATE OF KANSAS, *Appellee*, v. RANDY MARLER, *Appellant*.

(223 P.3d 804)

Opinion filed January 29, 2010.

*Rachel L. Pickering*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Evan C. Watson*, county attorney, argued the cause, and *Steve Six*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: A jury convicted Randy Marler of rape, aggravated indecent liberties with a child under age 14, and endangering a child; the district court imposed two hard 25 life sentences to be served consecutively. Marler appeals his convictions and sentences, claiming: (1) The district court erroneously admitted evidence of Marler's prior drug use under K.S.A. 60-455; (2) the district court gave an erroneous limiting instruction on the drug use evidence; (3) the district court erred in denying Marler's departure motion; and (4) the sentences imposed were disproportionately severe in violation of the Eighth Amendment to the United States Constitution and Section 9 of the Kansas Constitution Bill of Rights. We affirm both the convictions and the sentences.

### FACTUAL AND PROCEDURAL OVERVIEW

The charges against Marler alleged that he committed sexual acts upon his 13-year-old daughter, H.M. The allegations were originally brought to light when Marler's wife, Pam, applied for a protection from abuse (PFA) order, in which she related that she had witnessed Marler having oral sex with H.M. Pam sought the PFA order a few days after Marler was arrested and incarcerated as a result of a fight with Pam.

After the PFA application, Pam and H.M. were interviewed about the sexual abuse incident. H.M. reported that, on a Sunday evening, her father had given her 1½ measuring cups of Nyquil, together with some pills, which made her drift in and out of a sleep-like state for the next 3 days. She recalled awakening in bed and discovering that she was naked and that Marler had his head between her legs, "licking her 'down there.' " H.M. also recounted that on at least three other occasions Marler had touched her breasts and her crotch over the top of her clothing.

Pam related a similar version of the events, reporting that on a Sunday evening Marler had given H.M. Nyquil and a pill which she thought was either Valium or Xanex. The next day, upon returning home from picking up her son from school, Pam discovered Marler in bed performing oral sex on H.M. After she yelled at him to stop, Marler left the room, at which point Pam climbed into bed

with H.M. She later awoke to find Marler in the bed, again performing oral sex on H.M. Pam was granted use and derivative use immunity for her trial testimony, and, at trial, she also testified about using methamphetamine with Marler.

Captain Jeff Hawkins questioned Marler about the allegations. Marler related that both he and Pam had been using methamphetamines for several months and that during that time they both discussed having a sexual encounter with H.M. Marler claimed that it was Pam who provided the Nyquil and gave H.M. two or three Xanex tablets. He then reported that he took H.M. on an errand to Wichita and upon their return, Pam ordered H.M. to undress and get into bed. Marler alleged that Pam performed sex acts on H.M. He also stated that while Pam was picking up their son from school, he attempted to get back "with the plan" by positioning his head between H.M.'s legs so it would look as though he was having oral sex with her when Pam came back into the room. Captain Hawkins asked Marler to draft a written statement, and Marler complied with the request, bringing a handwritten, eight-page statement to Hawkins the next afternoon. The statement recounted the events as Marler had described them to Captain Hawkins the day before. It also included multiple references to Marler's methamphetamine use, which he blamed for his conduct. Captain Hawkins videotaped as he reviewed with Marler the contents of the written statement.

At trial, Marler recanted his written statement and claimed that he made it up in order to protect the children. His hope was that by implicating Pam, the children would be removed from her care. Accordingly, when the children were removed from the home and out of danger, he felt free to recant his false confession. However, Marler never objected to the introduction of his prior confessions.

A jury found Marler guilty of rape, aggravated indecent liberties with a child under 14, and endangering a child, but acquitted him of aggravated criminal sodomy. Marler moved for a departure sentence, arguing that his supportive family and employment history justified a downward departure. He also filed a motion for a new trial "based on the erroneous rulings during the trial" and pretrial. Both motions were denied. Marler was sentenced to two consec-

utive hard 25 life sentences. He filed a timely appeal directly with this court pursuant to K.S.A. 22-3601(b)(1).

### ADMISSIBILITY OF PRIOR DRUG USE EVIDENCE

Marler complains that there was no pretrial hearing to determine whether evidence of his prior drug use was relevant to prove plan, preparation, or the nature of the relationships within the Marler family, so as to be admissible under K.S.A. 60-455. He describes the offending evidence as the State's reference to Marler's drug usage during opening statements; Pam Marler's testimony that she and Marler did drugs and that he possessed Valium, Xanex, and methamphetamine; Captain Hawkins' testimony that Marler admitted during their interview that he and his wife had been using methamphetamine over an 8-month period; and Marler's eight-page written confession in which he blamed his actions on his methamphetamine use. However, in arguing against the admissibility of the evidence, Marler refers generally to his prior drug use, rather than identifying "a crime or civil wrong on a specified occasion." K.S.A. 60-455.

Nevertheless, we need not analyze the propriety of admitting any of the evidence of Marler's prior drug use under the provisions of K.S.A. 60-455. Marler's brief contains the concession that "Mr. Marler did not object to the admission of this K.S.A. 60-455 evidence." K.S.A. 60-404 instructs us that Marler's conviction cannot be reversed or set aside "by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection." The record in this case does not reflect that Marler filed a motion to suppress or a motion in limine to restrict the evidence which the State could produce, nor·does it contain any objection based upon K.S.A. 60-455 during the trial. In short, Marler did not preserve the issue for appeal. See, *e.g., State v. Riojas*, 288 Kan. 379, 385, 204 P.3d 578 (2009).

Marler does not explicitly argue that an exception to the contemporaneous objection rule should apply, and we do not view this case as an appropriate candidate for any such exception. The principal rationale for requiring a contemporaneous objection is to give

" ' " 'the trial court the opportunity to conduct the trial without using the tainted evidence, and thus avoid possible reversal and a new trial.' " *State v. Moore*, 218 Kan. 450, 455, 543 P.2d 923 (1975).' " *State v. King*, 288 Kan. 333, 342, 204 P.3d 585 (2009) (quoting *State v. Fewell*, 286 Kan. 370, 389, 184 P.3d 903 [2008]). The record in this case does not reflect that the trial court had any such opportunity with respect to Marler's prior drug use, either before or during the trial. Moreover, we discern a distinct possibility that Marler's failure to object to the evidence of his drug use might have been intentional. The evidence that he and his wife did drugs together would have helped explain the defense theory that his wife was the real culprit. Likewise, in Marler's written statement, he relied on the evidence of drug use to attempt to diminish his culpability for his participation in the plan.

In conclusion, we find that Marler's challenge to the admissibility of evidence of his prior drug use was not preserved for appeal, and we decline to address the issue.

## LIMITING INSTRUCTION

At the instruction conference, the court advised counsel that the court had noted the introduction of evidence of several other crimes, which had been admitted without an objection, and that the court was proposing to give a limiting instruction. Defense counsel acknowledged that the defense had wanted some of the other crimes evidence to be admitted, specifically acknowledging that the evidence of domestic violence supported the defense theory that Pam had a motive to lie and to get H.M. to lie about the incident. Both parties specifically responded to the court's inquiry, noting that there was no objection to the proposed instruction, the relevant portion of which read:

"Evidence has been admitted tending to prove that the defendant committed crimes, namely the use and possession of controlled substances, other than the present crimes charged. This evidence may be considered solely for the purpose of proving defendant's plan (mode of operation), defendant's preparation, and the nature of the relationships within the Marler family."

On appeal, Marler now complains that the instruction would have confused the jury because none of the listed purposes was

applicable in this case, and that the instruction would have misled the jury by overemphasizing factors that supported the State's theory.

### A. *Standard of Review*

Marler acknowledges that trial counsel did not object to the limiting instruction.

"No party may assign as error the giving or failure to give an instruction, . . . unless the party objects thereto before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objection unless the instruction or the failure to give an instruction is clearly erroneous." K.S.A. 22-3414(3).

See *State v. Vasquez*, 287 Kan. 40, 51, 194 P.3d 563 (2008); *State v. Murdock*, 286 Kan. 661, 684-85, 187 P.3d 1267 (2008). Instructions are clearly erroneous if there is a real possibility the jury would have rendered a different verdict had the instruction error not occurred. *Vasquez*, 287 Kan. at 51.

### B. *Analysis*

In arguing against the admissibility of the prior drug use evidence in the first issue, Marler discusses our prior cases which have endeavored to define when other crimes evidence falls within the K.S.A. 60-455 material facts of "plan" and "preparation." See, *e.g.*, *State v. Prine*, 287 Kan. 713, 729-36, 200 P.3d 1 (2009) (discussing mode of operation theory of "plan"); *State v. Gibson*, 30 Kan. App. 2d 937, 945, 52 P.3d 339, *rev. denied* 274 Kan. 1115 (2002) (discussing "preparation"). In this instruction issue, Marler contends that because his prior drug use does not fit nicely within our prior cases' definitions of plan and preparation evidence, the jury would have been confused by the inclusion of those terms in the limiting instruction. That argument apparently assumes that the lay jurors would have known that the words "plan (mode of operation)" and "preparation" were meant to refer to esoteric legal doctrines, and, therefore, the jurors would have been befuddled by the inapplicability of those legal definitions in this case. We do not accept the premise that the jurors would have known those legal definitions in the absence of a jury instruction defining them.

What the jurors would have known is that Marler's original statements described how he became involved with methamphetamine; how he introduced his wife to the drug; how the couple's mutual drug use led them to experiment with unusual sex acts; how the drug use emboldened the couple to hatch a plan to drug their daughter and use her for their sexual purposes; and how the couple prepared for and executed the plan. His written statement explicitly refers to the couple's agreement to drug and sexually abuse their daughter as "the plan."

Accordingly, the instruction that the jury was permitted to consider the evidence of "the use and possession of controlled substances, . . . solely for the purpose of proving defendant's plan (mode of operation), defendant's preparation, and the nature of the relationships within the Marler family" would not have been confusing to the jury under the facts of this case. The logical conclusion for the jurors would have been that they were not to consider the drug evidence for the purpose of criminal propensity or other prohibited use. Rather, the evidence was to be considered solely in the context of the changing relationship between Marler and his wife, their subsequent plan to drug and sexually abuse their daughter, and their preparation and execution of that plan.

In reaching this decision, we do not intend to abandon our precedent discussing when evidence of other crimes or civil wrongs fits within the categories of relevant material facts described as "plan" or "preparation," so as to be admissible. We are simply holding that the limiting instruction given in this case was not confusing to the jury and was not clearly erroneous. We discern no real possibility that the jury would have rendered a different verdict had the instruction not been given.

## DENIAL OF DOWNWARD DEPARTURE

Next, Marler asserts that the district court erred in denying his motion for downward durational departure. He claims that the presence of mitigating circumstances should have compelled the district court to deviate from the statutorily prescribed sentence.

### A. Standard of Review

Marler attempts to invoke a de novo standard of review by characterizing the issue as involving statutory interpretation. To the contrary, there is no dispute as to what the statute provides or with how the district court applied those provisions. Marler's complaint is simply that the court did not reach the decision which Marler wanted.

In that context, we review the denial of a sentencing departure motion for an abuse of discretion. *State v. Seward*, 289 Kan. 715, Syl. ¶ 4, 217 P.3d 443 (2009). "Judicial discretion is abused ' " 'when no reasonable person would take the view adopted by the district judge.' " ' " *Seward*, 289 Kan. 715, Syl. ¶ 4.

### B. Analysis

Pursuant to K.S.A. 21-4643(d), the sentencing court "shall" impose a hard 25 life sentence, "unless the judge finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure." A substantial reason is one that is " 'real, not imagined; something with substance and not ephemeral,' while the term "compelling" implies that the court is forced, by the facts of a case, to leave the status quo or go beyond what is ordinary.' *State v. McKay*, 271 Kan. 725, 728, 26 P.3d 58 (2001)." *Seward*, 289 Kan. at 722; *State v. Blackmon*, 285 Kan. 719, 724, 176 P.3d 160 (2008).

On appeal, Marler principally relies on his assertions that he had a very supportive family and had the potential to be gainfully employed. Below, trial counsel argued that Marler evidently had the support of his family because a sister and a brother attended the trial and another brother stayed in contact with defense counsel. Further, although Marler was unemployed at the time of the offenses, counsel argued that Marler believed he would be able to gain and maintain employment, given his significant job history. Pointedly, when given the opportunity to present evidence to support the asserted mitigating circumstances, counsel declined and chose to stand on his arguments.

Marler points to *State v. Murphy*, 270 Kan. 804, 19 P.3d 80 (2001), *abrogated on other grounds by State v. Martin*, 285 Kan.

735, 175 P.3d 832 (2008), in support of his argument that a supportive family and good employment record compel departure. First, Marler reads too much into the *Murphy* opinion. That decision acknowledged that a good employment record and a supportive family could be proper factors to consider when analyzing a departure motion, but those factors do not *require* departure. See *Murphy*, 270 Kan. at 807 (considering the factors in totality with other factors such as the defendant's young age and acknowledging that employment record is not enough on its own to justify departure).

Next, Marler is hampered by the absence of any evidence to support the claimed factors. The fact that family members may have attended the trial or contacted the defense attorney does not necessarily lead to the conclusion that they would be ready, willing, and able to support Marler's rehabilitative efforts. Likewise, Marler's belief that he could become gainfully employed, notwithstanding his unemployment at the time of the offenses, is unpersuasive, at best. The district court would have been justified in finding that Marler had not presented substantial and competent evidence to support the existence of the claimed mitigating factors. Certainly, then, we cannot find an abuse of discretion in the district court's determination that the claimed factors did not force the court to leave the status quo and depart from the ordinary.

## CRUEL AND UNUSUAL PUNISHMENT

Finally, Marler claims that he was sentenced much more severely than if he had intentionally killed H.M., and, therefore, his sentence is unconstitutionally disproportionate.

### A. *Standard of Review*

Constitutional challenges to statutes present questions of law subject to this court's unlimited review. *Seward*, 289 Kan. at 718. Generally, constitutional issues are not addressed when asserted for the first time on appeal. 289 Kan. at 718. However, *Pierce v. Board of County Commissioners*, 200 Kan. 74, 80-81, 434 P.2d 858 (1967), recognized three exceptions: (1) The newly asserted claim involves only a question of law arising on proved or admitted facts

and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the district court is right for the wrong reason.

*B. Analysis*

Marler argues that his two consecutive, hard 25 life sentences constitute cruel and unusual punishment, violating the Eighth Amendment to the United States Constitution and Section 9 of the Kansas Constitution Bill of Rights. He acknowledges that this court has previously refused to consider such claims when asserted for the first time on appeal, because the issue requires factual findings by the district court. See *State v. Ortega-Cadelan*, 287 Kan. 157, 161, 194 P.3d 1195 (2008). Marler attempts to distinguish his circumstance because he had a trial, during which the facts were developed, and, therefore, this court has a sufficient record from which to decide the issue.

We have already rejected that distinction. In *State v. Thomas*, 288 Kan. 157, 161, 199 P.3d 1265 (2009), the defendant attempted to distinguish the facts of his case from *Ortega-Cadelan* by arguing that the record was sufficient for this court to make the factual determinations necessary to complete the analysis of whether the defendant had been subjected to a cruel and unusual punishment. In denying that argument, this court stated: "This argument ignores the role of this court: Appellate courts do not make factual findings but review those made by district courts. [Citation omitted.] Here, no factual findings were made upon which this court can base an analysis of whether the sentence is cruel or unusual." 288 Kan. at 161.

Marler did not even suggest to the district court that he was claiming an unconstitutionally disproportionate sentence. *Cf. State v. Seward*, 289 Kan. at 721 (remand to district court for findings where defendant raised cruel and/or unusual punishment issue below). Accordingly, Marler did not preserve the issue for appeal, and we decline the invitation to engage in the appellate fact-finding

which would be required to consider the issue for the first time on appeal.

Affirmed.