NOT DESIGNATED FOR PUBLICATION

No. 112,727

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL J. LIMBURG,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; MICHAEL J. MALONE, judge. Opinion filed June 10, 2016. Affirmed.

*Joanna Labastida*, of Kansas Appellate Defender Office, for appellant.

*Patrick J. Hurley*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., BRUNS, J., and WALKER, S.J.

*Per Curiam*:  A jury convicted Michael J. Limburg of 14 felony counts of sexual exploitation of a child. Four of those convictions were severity level 5 person felonies based on Limburg's possession of child pornography. The remaining 10 convictions were off-grid felonies based on his promotion of child pornography. This is Limburg's direct appeal from his convictions and controlling sentence of life without the possibility of parole for 25 years (hard 25). Since we find no errors requiring reversal, the trial court's decisions are affirmed.

1

During a 4-day jury trial, the State presented extensive evidence showing that Limburg searched for, downloaded, and made available for sharing several child pornography videos. More specifically, the evidence showed that detectives from Lawrence, Kansas, were being trained in Denver, Colorado, on the use of a peer-to-peer sharing network called ARES, known to be used to unlawfully share child pornography videos and images. During that training, the detectives discovered and were able to fully or partially download 12 files containing child pornography that they ultimately determined Limburg, a Lawrence resident, had uploaded into the shared file. Those videos, which the jury viewed at least part of, had titles or file names with terms commonly known in the industry to reference child pornography. During their subsequent investigation, police determined Limburg downloaded these videos to the shared file on ARES on specific dates between May 1, 2012, and July 16, 2012. A later search of Limburg's computer also uncovered evidence that 27 search terms known to be related to child pornography were used in searching ARES and in using software to view videos such as Windows Media Player.

The State also presented evidence that Limburg possessed images of child pornography. For example, a search of the hard drive of Limburg's computer unveiled approximately 50 images of child pornography, 29 of which were printed off and shown to the jury. During their search of Limburg's apartment, the police also seized 25 floppy disks, 15 of which contained images or movies. Eleven of those images, which were shown to the jury, apparently contained pictures of young girls engaged in sexually explicit conduct.

In addition to showing the jury the sexually explicit videos and images, the State presented undisputed evidence of the approximate age of the girls who were shown. A pediatrician testified at length that based on his observations of the physical traits of the

girls in the videos and images, they were mostly between the ages of 8 and 10, with others appearing between the ages of 4 and 6, 9 and 10, or generally "under 10."

Limburg voluntarily spoke to the police and denied any connection to child pornography in a recorded statement played for the jury. During his statement, Limburg admitted that he searched websites for adult pornography. However, he explicitly denied ever intentionally searching for, downloading, or possessing videos or images of child pornography. Limburg theorized that some of the child pornography the police found could have ended up on his computer inadvertently because the file sharing programs he used, such as ARES, for online gaming or for sharing and downloading books, music, or adult pornography would automatically upload them without his knowledge. Limburg also explained that he sometimes accidentally and unwittingly open websites containing disturbing images that could constitute child pornography but were not at all what he had intended to find through his innocuous searches for games, books, or music. Limburg explained that as soon as he realized this was happening, he would attempt to delete the files or repartition his computer to permanently erase any hint of the offending material or spyware; but that did not always work. Limburg also denied any knowledge of what might be found on one of his old computers or the floppy disks in his apartment, one of which had the term "girls" written on it, because he found those in the trash while dumpster diving. Such plausible deniability was Limburg's main defense at trial.

The jury was charged with determining whether Limburg was guilty of a total of 14 crimes resulting from this investigation. Each of the 12 videos downloaded from ARES by officers served as the basis for individual charges for sexual exploitation of a child based on the "promoting [a] performance" in violation of K.S.A. 2012 Supp. 21-5510(a)(4). These charges were off-grid offenses subject to a life sentence without the possibility of parole for 25 years under what is commonly referred to as Jessica's Law. See K.S.A. 2012 Supp. 21-6627(a)(1)(F). The results of the searches of Limburg's hard drive and the floppy disks found in his apartment led to two charges of sexual

exploitation of a child based on the possession of a visual depiction in violation of K.S.A. 2012 Supp. 21-5510(a)(2), severity level 5 person felonies. K.S.A. 2012 Supp. 21-5510(b)(1)(A). The trial court also instructed without objection that for each of the off-grid offenses, the jury could instead find Limburg guilty of sexual exploitation of a child by possession of a visual depiction constituting child pornography as a lesser included offense.

The jury ultimately found Limburg guilty of 10 of the 12 off-grid felony counts of sexual exploitation by promoting a performance and guilty of 4 severity level 5 offenses of sexual exploitation by possessing a visual depiction, 2 as originally charged and 2 as lesser included offenses of the off-grid felonies.

Prior to sentencing, Limburg filed several motions, including a motion to depart from the hard 25 sentences for his off-grid convictions to 96 months' imprisonment, which was double the aggravated presumptive sentence for a severity level 5 offense under the sentencing guidelines grid. After conducting a hearing on those motions and taking the matters under advisement, the trial court denied the motions and imposed concurrent sentences resulting in a controlling hard 25 sentence. This is Limburg's timely direct appeal from his convictions and sentences.

ANALYSIS

In his first issue on appeal, Limburg argues the identical offense doctrine applies to require him to be sentenced on all of his convictions of off-grid offenses for sexual exploitation based on the promoting of a performance to the lesser, severity level 5 penalty for sexual exploitation of a child based on possession of a visual depiction. The State responds that either Limburg waived or invited any error he alleges here, or the identical offense doctrine does not apply because, as a matter of law, the offenses are not identical.

4

The identical offense sentencing doctrine requires that "where two offenses have identical elements, an offender can be sentenced to only the less severe penalty applying to the two offenses." *State v. Snellings*, 294 Kan. 149, 150, 273 P.3d 739 (2012). Whether the doctrine applies presents a question of law over which appellate review is unlimited. 294 Kan. at 152.

As our Supreme Court explained in *Snellings*:

"[T]here are three situations where offenses may have identical provisions: (1) where one offense is a lesser included offense of the other; (2) where some provisions in two statutes overlap, the overlapping provisions apply to the charged crime, and the overlapping provisions are identical except for the penalty provisions; and (3) where all provisions in two statutes are identical except for the penalty provisions. The identical offense sentencing doctrine applies to the second and third situations. *State v. Campbell*, 279 Kan. 1, 14-15, 106 P.3d 1129 (2005) (quoting 4 LaFave, Israel & King, Criminal Procedure §13.7[a], pp. 95-99 [2d ed.1999])." 294 Kan. at 152.

The parties disagree about which, if any, of these situations can be found in Limburg's case.

Limburg suggests his situation falls into the second category, *i.e.*, overlapping provisions. In this regard, our Supreme Court has further explained:

"'When two statutes contain overlapping provisions, this court must examine the facts in order to determine the area of overlap. Once it is determined which provisions of a statute apply, the only question is whether the overlapping provisions contain identical elements. That determination is made from the statute.' [*State v.*] *Cooper*, 285 Kan. [964,] 967[, 179 P.3d 439 (2008)]. But, as the Court of Appeals noted, 'the test is not whether the facts would support an alternative charge but whether the applicable elements of the charged offense are identical to the elements of an offense imposing a lesser penalty, *i.e.*, what facts the State is required to prove to obtain a conviction.' [*State v.*] *Williams*, 46 Kan.

5

App. 2d [36,] 50[, 257 P.3d 849 (2011), *aff'd by State v. Williams*, 299 Kan. 911, 329 P.3d 400 (2014)] (citing *Cooper*, 285 Kan. at 967)." *Williams*, 299 Kan. at 926.

With respect to the 12 off-grid charges of sexual exploitation of a child by promoting a performance, the trial court instructed the jury to use the following definition: "'[p]romoting' means procuring, transmitting, distributing, circulating, presenting, producing, directing, manufacturing, issuing, publishing, displaying, exhibiting, or advertising for pecuniary profit or with the intent to arouse or gratify the sexual desire or appeal to the prurient interest of the defendant or another person." This instruction mirrors the statutory definition of "promoting." See K.S.A. 2012 Supp. 21-5510(d)(2) (so defining "promoting" as used in K.S.A. 2012 Supp. 21-5510[a][4]).

Limburg complains that this is misleading to jurors because a person who "procures" child pornography necessarily obtains possession of it, and therefore the statutes overlap. He reasons that since possession of child pornography is punished as a level 5 person felony, the offenses are identical for sentencing purposes and thus Limburg could only be sentenced on the basis of a level 5 felony. The State's alternative responses to the argument will be considered here in turn.

First, the State suggests that whether right or wrong, by Limburg's own actions or inactions, this case represents the first situation described by the *Snellings* court. In other words, the identical provisions here are lesser included offenses, so the identical offense doctrine does not apply. In support, the State argues Limburg waived or invited any error when he (1) did not object to the trial court's treatment of possessing a visual depiction in violation of K.S.A. 2012 Supp. 21-5510(a)(2) as a lesser included offense of promoting a performance in violation of K.S.A. 2012 Supp. 21-5510(a)(4), and then (2) benefitted from the resulting instructions on lesser included offenses in formulating his closing argument.

6

At first glance, the State's argument here is at least appealing. Notably, in framing the issue as one of waiver or invited error, the State hints that it now does not believe that possession is, indeed, a lesser included offense of promotion. Limburg did not file a reply brief to respond to this argument. The doctrines of waiver and invited error generally require the showing of some affirmative or knowing decision by a defendant to relinquish a right or to invite and lead a court into error. See *State v. Soto*, 301 Kan. 969, 983, 349 P.3d 1256 (2015) (noting doctrine of invited error generally precludes criminal defendant from affirmatively inviting and leading court into error and then complaining of that error on appeal); *State v. Hargrove*, 48 Kan. App. 2d 522, 533, 293 P.3d 787 (2013) (discussing criminal defendant's ability to knowingly and voluntarily relinquish or waive constitutional rights). In the absence of briefing from either party on the issue of whether Limburg waived any rights or it was, indeed, error for the trial court to give lesser included offense instructions, this does not appear to be an appropriate situation to apply principles of waiver or the invited error doctrine. Stated another way, it is difficult to say that Limburg waived his right to raise or invite an alleged *sentencing* error by not objecting to and taking advantage of an alleged *instructional* error.

The State's alternative argument is much more persuasive to us. The State believes Limburg's argument that the offenses of sexual exploitation based on promoting and possessing of child pornography overlap should be rejected by this court. In support of that position, the State points out that the definition of "promoting" found in K.S.A. 2012 Supp. 21-5510(d)(2), as set out in the jury instruction, contains numerous definitions for what can constitute that element that can arguably be done without having actual possession, including: "transmitting, distributing, circulating, presenting, producing, directing, manufacturing, issuing, publishing, displaying, exhibiting or advertising." K.S.A. 2012 Supp. 21-5510(d)(2). The State also points out that the terms "procure" and "possess" are not identical or overlapping. In support, the State points out the following distinct definitions of those terms:

- The term "procure" is an active verb that involves affirmatively making an effort or cause the obtaining of something for a particular means. See, *e.g.*, Black's Law Dictionary 1401 (10th ed. 2014) (defining "To obtain (something), esp[ecially] by special effort or means. 2. To achieve or bring about (a result). 3. To obtain a sexual partner for another, esp[ecially] an unlawful partner such as a minor or a prostitute."); *State v. Eason*, 163 Kan. 763, 768, 186 P.2d 269 (1947) (finding upon review of evidence supporting defendant's conviction of procuring female person to enter house for purpose of prostitution in violation of G.S. 1935, 21-937 that prosecution did not have to prove defendant used physical force to compel girl to remain in house because "'[p]rocure' is a broad word. It means to bring about or to cause to happen."); *State v. Rieman*, 118 Kan. 577, Syl. ¶ 1, 235 P. 1050 (1925) ("In the statute making it a felony for any person to persuade, induce, entice or procure any female person to go from one place to another within the state for the purpose of prostitution, fornication, or concubinage, the word procure means to bring about, effect, cause; and neither persuasion nor inducing or enticing attraction are necessary to procurement.").
- The term "possess," on the other hand is passive, meaning:  "1. To have in one's actual control; to have possession of. 2. To have (a quality, ability, etc.)." Black's Law Dictionary 1351 (10th ed. 2014). Accord *Tripp v. United States Fire Ins. Co.*, 141 Kan. 897, 899, 44 P.2d 236 (1935) (determining what word "possession" means in automobile insurance policy by citing Webster's New International Dictionary [2d ed.], which defined "possess," in part, as:  "3. a To have and to hold as property; to have a just right to; to be master of; to own, etc.").

The State contends that procuring is more than possession; and promoting means making something available to others, as opposed to merely holding onto something. As the trial court pointed out in rejecting Limburg's motion to dismiss based on multiplicity, these terms are closely related and find their place on a continuum of activities in the

8

child pornography industry. But this does not necessarily answer the question before this court.

The question before us boils down to whether the terms "possess" and "procure" overlap under the language of the statute defining "promoting," K.S.A. 2012 Supp. 21-5510(d)(2). Since we cannot determine just what element of the promoting statute the jury applied to find Limburg guilty, we have to assume it *may* have been procuring rather than transmitting child pornography. Either would be consistent with the facts in this case.

Limburg essentially contends that if someone possesses something, they must invariably have procured it, and vice versa, but we believe this is an oversimplification. We certainly understand that the act of procuring something may involve its possession, but we reject Limburg's argument that such is always true. In certain circumstances a person may obtain or procure an item for another person but will never possess it. A simple example will suffice. If A orders a gift from a retailer who then ships the gift directly to B, A has certainly procured the gift for B. But A has never possessed the gift. Once the gift is delivered, B possesses it but did not procure it. Extending the analogy to this case, Limburg certainly could have procured the offending materials for someone else without actually possessing them himself. Thus Limburg's contention that procuring invariably involves possessing lacks merit.

We are also mindful of the fact that the identical offense doctrine compares *elements* of offenses. See *Snellings*, 294 Kan. at 151. Here, the elements being compared are "promoting" and "possessing." The definition of "promoting" given to the jury does not, as the parties seem to suggest, encompass additional elements of the offense. Rather, that statutory definition merely lists options within a means, *i.e.*, describes the types of factual circumstances that may prove the material element of "promoting." See *State v. Brown*, 295 Kan. 181, 196-97, 284 P.3d 977 (2012) (holding that "options within a

9

means"—*i.e.*, options that do not state material, distinct element such as options found in definition statutes which merely describe material element or factual circumstance that would prove crime—do not warrant application of the "alternative means rule/super-sufficiency requirement"). In that regard, the trial court arguably erred in giving a multiple acts instruction, but that is not an issue before this court. This point is made simply to demonstrate that the identical offense sentencing doctrine does not, as Limburg suggests, look for overlap between any option within a means for proving a material element and an element of another offense. This is because the jury does not have to unanimously agree about what option within the means it relied upon in finding the State proved the material element. Thus, any such findings do not warrant sentencing on a lesser offense.

Even if the trial court did look to factual overlap between options within means and an element of a lesser crime, "factual overlap is not determinative of whether the offenses" are identical. *Williams*, 299 Kan. at 926. Rather:

> "'[T]he facts of the case are only relevant to determine which provisions of a statute apply—a preliminary step—not as a final step of examining the record to determine what evidence was used to prove the overlapping elements.' *Snellings*, 294 Kan. at 166. The final step, whether the overlapping provisions contain identical elements, is a determination that is made from the statute." *Williams*, 299 Kan. at 926-27.

It is important to note the parties' arguments concerning factual overlap in Limburg's case based on similarities between the verbs "procuring" and "possessing" wholly overlook the fact that in this case, the trial court found the greater offenses for promoting child pornography were based on Limburg's act of promoting by *transmitting*, not procuring. Thus, there was arguably no factual overlap in this case.

Even if there was factual overlap, the overlapping provisions of the statutes at issue here do not contain identical elements:

10

- The off-grid offense of sexual exploitation in violation of K.S.A. 2012 Supp. 21-5510(a)(4) requires proof that the defendant engaged in promoting a performance that included sexually explicit conduct by a child under the age of 18 or a person the offender believed was under 18 "knowing the character and content of the performance." In that context, "'performance' means any film, photograph, negative, slide, book, magazine or other printed or visual medium, any audio tape recording or any photocopy, video tape, video laser disk, computer hardware, software, floppy disk or any other computer related equipment or computer generated image that contains or incorporates in any manner any film, photograph, negative, photocopy, video tape or video laser disk or any play or other live presentation." K.S.A. 2012 Supp. 21-5510(d)(3).

- The severity level 5 offense of sexual exploitation in violation of K.S.A. 2012 Supp. 21-5510(a)(2), on the other hand, required the possession of "any visual depiction of a child under 18 years of age shown or heard engaging in sexually explicit conduct with intent to arouse or satisfy the sexual desires or appeal to the prurient interest of the offender or any other person." In this regard, "'visual depiction' means any photograph, film, video picture, digital or computer-generated image or picture, whether made or produced by electronic, mechanical or other means." K.S.A. 2012 Supp. 21-5510(d)(5).

Simply put, the State did not have to prove any intent to arouse sexual desires or appeal to prurient interests in order to secure a conviction of promoting a performance, so the offenses are not identical.

For all of these reasons, we reject Limburg's argument that he should be sentenced at the severity level 5 felony level based upon the identical offense doctrine.

Limburg's second issue on appeal challenges the burden-of-proof instruction. That instruction, which was patterned after PIK Crim. 4th 51.010, read, in pertinent part:

"If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you *should* find the defendant guilty." (Emphasis added.)

Limburg argues he should get a new trial because the use of the term *should* effectively negated the possibility of jury nullification. Stated another way, he argues "[i]f a jury *should* convict then nullification is not an option." The State initially responds that this court should not consider this error because it was invited by Limburg. Alternatively, the State argues there was no error in giving this legally appropriate jury instruction; but even if there was error, it was harmless.

Although Limburg admittedly did not object to the giving of this instruction at trial, this does not mean, as the State briefly suggests, that he invited the error. As mentioned briefly above, the invited error doctrine generally precludes a criminal defendant from affirmatively inviting and leading a court into error and then complaining of that error on appeal. *Soto*, 301 Kan. at 983. An appellate court generally declines to apply the invited error rule where, for example, a defendant merely acquiesces in a trial court's ruling on a jury instruction by, for example, failing to object. See 301 Kan. at 982-83 (declining to apply invited error rule to defendant's challenge to omission of instruction on second-degree murder where defendant did not object to State's request for instruction and acquiesced in trial judge's ruling that instruction not proper under facts); accord *Hargrove*, 48 Kan. App. 2d at 523 (holding:  "Even if the invited error rule might be appropriately applied to common trial decisions that unintentionally compromise a given defendant's constitutional rights, it ought to be relaxed for those deficiencies in jury instructions. Absent tactical intent on counsel's part, the shared responsibility for preparing final jury instructions weighs against rigid application of invited error to deflect a constitutional challenge."). Thus we decline the State's invitation to apply the invited error doctrine under the facts of this case.

Limburg's failure to object does, however, limit the scope of this court's review, allowing this court to reverse only if it finds the challenged instruction clearly erroneous. See K.S.A. 2015 Supp. 22-3414(3); *State v. Smyser*, 297 Kan. 199, 204, 299 P.3d 309 (2013). Review for clear error in a jury instruction involves progressive steps. Under the first step, this court must determine whether any error occurred. This requires unlimited review of the entire record to determine whether the instruction was legally and factually appropriate. If so, review stops there. If not, then this court moves on to the second step, under which this court will affirm despite the instructional error unless it is firmly convinced that the jury would have reached a different verdict absent the instructional error. See *State v. Clay*, 300 Kan. 401, 408, 329 P.3d 484 (2014).

Notably, at least two other panels of this court have rejected this same challenge to use of the term "should" in the burden of proof instruction under the first step of the analysis. For example, in *State v. Singleton*, No. 112,997, 2016 WL 368083, at *4-6 (Kan. App. 2016) (unpublished opinion), *petition for rev. filed* February 26, 2016, the defendant argued that the term "should" as used in PIK Crim. 4th 51.010 deprived the jury of the option of nullification. In support, the defendant relied on our Supreme Court's holding in *State v. Smith-Parker*, 301 Kan. 132, 164, 340 P.3d 485 (2014), that use of the terms "must" and "will" where "should" now appears in the pattern instruction inappropriately directed a verdict. *Singleton*, 2016 WL 368083, at *4-5. The *Singleton* panel rejected that argument, explaining:

> "[A]s every teacher instructing a class knows, and as every parent admonishing a child knows, should is less of an imperative than must or will. [Citation omitted.] . . . Should as used in this instruction is not the equivalent of 'must' or 'will' used in the instructions discussed in . . . *Smith-Parker*. Should is advisory. It is not an imperative." 2016 WL 368083, at *6.

Similarly, in *State v. Jones*, No. 111,386, 2015 WL 4716235, at *5-6 (Kan. App. 2015) (unpublished opinion), *rev. denied* 303 Kan. ___ (February 18, 2016), the panel found

13

use of the term "should" in PIK Crim. 4th 51.010 was legally appropriate in rejecting defendant's argument that the court erred in refusing his request to modify that term to "may."

Limburg presents no compelling argument as to why this panel should reach a different result in his case. We believe the decisions from other panels cited above were well-reasoned in their holding under the first step of the analysis that there was no error in the burden of proof instruction given by the trial court patterned after PIK Crim. 4th 51.010.

In his third and final issue on appeal, Limburg challenges the trial court's denial of his motion to depart from the hard 25 sentences for his 10 convictions of the off-grid offense of sexual exploitation. The State responds that the trial court was well within its discretion in concluding the mitigating factors cited by Limburg in support of his motion were not substantial and compelling reasons for the court to depart. Before addressing these arguments, a review of the governing law, the trial court's decision, and this court's standard of review is necessary for context.

To reiterate, the trial court imposed the standard sentences under the law. Again, for each of Limburg's off-grid convictions of sexual exploitation of a child in violation of K.S.A. 2012 Supp. 21-5510(a)(4), he faced a hard 25 sentence under Jessica's Law under K.S.A. 2012 Supp. 21-6627(a)(1)(F). Because these were Limburg's first offenses under Jessica's Law, the statute granted the trial court discretion to depart from the hard 25 sentences if it found "substantial and compelling reasons, following a review of mitigating circumstances" to do so. See K.S.A. 2012 Supp. 21-6627(d). In this context, our Supreme Court "'has defined "substantial" as "something that is real, not imagined; something with substance and not ephemeral," while the term "'compelling' implies that the court is forced, *by the facts of a case*, to leave the status quo or go beyond what is ordinary."' [Citation omitted.]" *State v. Jolly*, 301 Kan. 313, 323, 342 P.3d 935 (2015).

In ruling on Limburg's departure motion, the trial court had at its disposal a nonexclusive statutory list of mitigating factors that our legislature identifies can, but do not necessarily, constitute substantial and compelling reasons for departure from a hard 25 sentence under Jessica's Law. See K.S.A. 2012 Supp. 21-6627(d)(2)(A)-(F). Two of those were cited by Limburg, *i.e.*, the lack of significant history of prior criminal activity and the age of the defendant at the time of the crime. K.S.A. 2012 Supp. 21-6627(d)(2)(A), (F). Notably, however, "even though mitigating circumstances must be present for a finding of substantial and compelling reasons, mitigating circumstances do not necessarily equal substantial and compelling reasons." *Jolly*, 301 Kan. at 323. In fact, "[t]here is no formula for this determination, and the list of nonexclusive mitigating circumstances merely serves as a guide for analysis." *State v. Ortega-Cadelan*, 287 Kan. 157, 165, 194 P.3d 1195 (2008).

Limburg moved the trial court to impose "a durational departure sentence" of 96 months' imprisonment for all of his convictions, which represents twice the aggravated presumptive guidelines sentence for a severity level 5 offense under K.S.A. 2012 Supp. 21-5510(a)(2) based on Limburg's criminal history score of F. See K.S.A. 2012 Supp. 21-6804 (sentencing grid for nondrug crimes); K.S.A. 2012 Supp. 21-6819(b)(4) ("The total prison sentence imposed in a case involving multiple convictions arising from multiple counts within an information, complaint or indictment cannot exceed twice the base sentence."). Technically speaking, this was not a request for a "downward durational departure," which refers to "a departure from the grid box sentence dictated by the intersection of severity level and criminal history to a shorter determinate prison sentence." *State v. Spencer*, 291 Kan. 796, 828, 248 P.3d 256 (2011). Rather, Limburg requested departures from off-grid life sentences. In support of his departure motion, Limburg cited three mitigating factors: (1) his lack of significant criminal history, other than convictions of driving under the influence; (2) his age (46), which statistically corresponded to a lesser risk of recidivism; and (3) his "promotion" was: (a) little more than "'passive sharing,'" which was "from a culpability standpoint . . . difficult, if not

impossible to distinguish" from the severity level 5 possession offense; and (b) "significantly less egregious than the 'promoting' that is at the heart of the conduct targeted by the statute," *i.e.*, active manufacturing and distribution.

The trial court allowed the parties to present extensive arguments on this departure issue prior to imposing Limburg's sentence. The majority of the arguments centered on Limburg's insistence that his private act of downloading the videos to a shared server without any financial expenditure or gain and for a relatively short period of time before deleting them is significantly less egregious than having contact with the children in the manufacturing or distributing of the offensive performances and depictions.

After taking the matter under advisement to study the law in more detail, the trial court denied Limburg's departure motion. In support, the trial court focused on the third mitigating factor advanced by Limburg. In that regard, the court found there was no dispute that under the facts of this case, Limburg's "promoting" of the performances was, indeed, "at the low end of [the] spectrum or this ambit of involvement" for the continuum of seriousness of actions that our legislature has criminalized under K.S.A. 2012 Supp. 21-5210(a)(4). The court noted that one of those actions, *i.e.*, "transmitting" is "what the evidence showed that Mr. Limburg did in this particular case." The trial court highlighted our legislature's decision not to distinguish between the verbs representing a "continuum of seriousness" in describing the types of factual circumstances that can prove the material element of the off-grid crime of sexual exploitation by "promoting" a performance. Consequently, the court ruled it could not find substantial and compelling reasons to grant a departure on the facts of this case and arguments advanced by the parties. Limburg challenges that conclusion here.

This court reviews the trial court's determination that there were no substantial and compelling reasons to depart from the hard 25 sentences in this case for an abuse of discretion. See *State v. Randolph*, 297 Kan. 320, 336, 301 P.3d 300 (2013). A judicial

action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014). Limburg bears the burden of proving the trial court abused its discretion. See *State v. Rojas-Marceleno*, 295 Kan. 525, 531, 285 P.3d 361 (2012) (noting that party alleging abuse of discretion bears burden of proof).

In his brief on appeal, Limburg does not point this court to any errors of fact or law made by the trial court. Thus, we are is limited to reviewing whether the trial court's denial of Limburg's departure motion was arbitrary, fanciful, or unreasonable.

In support of his argument on appeal, Limburg essentially reiterates his argument below. That is, he insists that his lesser degree of culpability, combined with the lesser degree of harm and his minimal criminal history provided the trial court substantial and compelling reasons to grant a departure. In support, Limburg points to cases that have cited with approval the mitigating factors he relied upon in support of his motion, albeit they did so in the context of reviewing a departure from sentences not imposed under Jessica's Law. See, *e.g.*, *State v. Murphy*, 270 Kan. 804, 807, 19 P.3d 80 (2001) (recognizing defendant's lack of criminal history, which was "not sufficient to justify a departure" on its own because it had been taken into account on criminal sentencing grid, "could be considered in overall picture"), *abrogated on other grounds by State v. Martin*, 285 Kan. 735, 175 P.3d 832 (2008); *State v. Favela*, 259 Kan. 215, 235, 911 P.2d 792 (1996) (citing lesser degree of harm as mitigating factor in reviewing departure from presumptive sentence for attempted second-degree murder).

The State responds that the trial court did not abuse its discretion in properly considering each factor cited in Limburg's departure motion and finding they were not substantial and compelling either individually or collectively. In support, the State cites other cases that have found no abuse of discretion where the trial court denied departures based on the same or similar mitigating factors relied upon by Limburg in addition to

17

other mitigating factors not present here. See, *e.g.*, *State v. Tervino*, 290 Kan. 317, 322-23, 227 P.3d 951 (2010) (finding no abuse of discretion in denial of departure even though defendant had little criminal history); *State v. Robinson*, 290 Kan. 51, 55-57, 222 P.3d 500 (2010) (finding no abuse of discretion in denial of departure even though defendant had insubstantial criminal history, accepted responsibility, and demonstrated remorse); *State v. Gilliland*, No. 100,802, 2010 WL 1379182, at \*2-3 (Kan. 2010) (unpublished opinion) (finding no abuse of discretion in court's denial of defendant's motion to depart from concurrent hard 25 sentences under Jessica's Law based in part upon his lack of prior criminal activity and age of 65). The State also goes to great lengths to debunk the fallacies of Limburg's contention that his lack of direct involvement in the actual sexual brutalization of the children depicted in the pornography he possessed or the performances he promoted by leaving in the shared folder on ARES for others to access should serve as a mitigating factor. See *State v. Zabrinas*, 271 Kan. 422, 430, 24 P.3d 77 (2001) (quoting *New York v. Ferber*, 458 U.S. 747, 759, 102 S. Ct. 3348, 73 L. Ed. 2d 1113 [1982], in recognizing ongoing, intrinsic harm caused by distribution and ongoing circulation of child pornography); *State v. Coburn*, 38 Kan. App. 2d 1036, 1062-63, 176 P.3d 203 (2008) (citing *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 240, 122 S. Ct. 1389, 152 L. Ed. 2d 403 [2002]; and *Ferber*, 458 U.S. at 761, in highlighting State's interest "in protecting the children exploited by the [pornography] production process" as well as a State's "particular and compelling interest in prosecuting those who promote the sexual exploitation of children"); *State v. Thompson*, No. 111,326, 2015 WL 3874929 (Kan. App. 2105) (unpublished opinion) (citing *Zabrinas* and *Ferber* in discussing ongoing harm to children exacerbated by circulation of photographs and films depicting their sexual activity), *rev. denied* 303 Kan. __ (February 9, 2016).

The transcript of the hearing on Limburg's motion to depart reveals that the trial court went to great lengths in acknowledging and considering the mitigating circumstances asserted by Limburg before explaining why it denied his departure requests upon finding those circumstances were not substantial and compelling. Limburg

points to nothing about the trial court's decision that this court could deem arbitrary, fanciful, or unreasonable.

Accordingly, we hold Limburg has not shown the trial court abused its discretion in denying his motion for a departure from the concurrent hard 25 sentences imposed upon his convictions of sexual exploitation based on promoting a performance of a child under the age of 18.

Affirmed.